Jennifer Leigh JENKINS, Appellant,

v.

Christopher Lee JENKINS, Appellee.

No. 08–99–00116–CV.

Court of Appeals of Texas,
El Paso.

April 6, 2000.

John Hoestenbach, Odessa, for Appellant.

Richard P. McKeel, Odessa, for Appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

This is an appeal from the modification of a joint managing conservatorship in which Jennifer Leigh Jenkins challenges the designation of her former husband as having the right to establish the primary residence of their son. Finding no error, we affirm.

### SUMMARY OF THE EVIDENCE

Jennifer and Chris Jenkins were divorced by final decree on December 31, 1997 and appointed joint managing conservators of their then three-year-old son, Zachary. Jennifer was granted the sole right to establish Zachary's primary residence. The decree specifically ordered that Jennifer "shall not reside with, nor have any unmarried males over the age of thirteen for overnight visits during any period that JENNIFER LEIGH JENKINS is in possession of the child." Additionally, the decree ordered:

> [T]hat the primary residence of the child shall be established in Ector County, Texas. The parties shall not remove the child from Ector County, Texas for the purpose of changing the primary residence of the child until this order is modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court.

With regard to the division of property, Jennifer was awarded the couple's home at 3620 North Adams in Odessa. However, the terms of the final decree did not fully comport with the trial court's judgment

rendered in open court on September 19, 1997:

> THE COURT: The child also, I will point out, *must reside at that home* unless they have prior order of the Court. Okay? ... No change in the residence. [Emphasis added].

In May 1998, Chris Jenkins sought to correct the error in the decree concerning Zachary's primary residence via a motion for judgment nunc pro tunc. The motion was granted on May 27, 1998, and the final decree was modified to reflect that Zachary's primary residence was established at 3620 North Adams and that any change in residence required court approval. Jennifer did not appeal or otherwise challenge the judgment nunc pro tunc. At the modification hearing at issue here, however, Jennifer testified that she was unaware of the judgment nunc pro tunc.

On August 28, 1998, Chris filed a motion to enforce and a motion to modify the divorce decree. He alleged that since the divorce, Jennifer had continued to reside with her boyfriend, Sam Lance, first at 3620 North Adams and then at 2609 Spur, in violation of the divorce decree. He also contended that Jennifer had moved Zachary's primary residence from the North Adams home without court approval, and was cohabitating with Lance when she had possession of Zachary. Chris asked the court to find Jennifer in contempt and to modify the decree to designate him as the joint managing conservator having the sole right to establish the primary residence of Zachary.

In her answer, Jennifer admitted that she had moved to 2609 Spur, but claimed that the change of residence was only temporary. Once repairs on the home at 3620 North Adams were completed, she and Zachary would return. At the hearing on the motion, Jennifer also contended that she and Lance had entered into a common law marriage. The trial court found that she had violated the court's orders against moving the primary residence of the child and against having overnight male guests when she had possession of Zachary. The court did not hold her in contempt, but it did modify the decree so as to grant Chris the right to establish Zachary's primary residence under the joint managing conservatorship.

Upon request, the trial court entered findings of fact and conclusions of law. Pertinent to our analysis here, the court found:

- Jennifer was present in the courtroom when the court ordered that she not cohabitate with any man to whom she was not married when she had possession of Zachary.
- Jennifer had admitted to residing with Sam Lance at 2609 Spur.
- Jennifer had resided with Sam Lance at 2609 Spur when she had possession of Zachary.
- There was no evidence of a ceremonial marriage and no common law marriage was established.
- Jennifer changed the residence of the child and gave no notice.
- Jennifer had knowingly and intentionally violated the court's orders.
- The existing order regarding possession of the child had become inappropriate under the circumstances.
- Retention of the joint managing conservatorship was in Zachary's best interest.
- The award to Chris of primary custody and the right to establish the primary residence of Zachary would be a positive improvement and in the best interest of Zachary.

This appeal follows.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT

## MODIFICATION OF THE RIGHT TO ESTABLISH PRIMARY RESIDENCE

■ In her first two issues for review, Jennifer complains that the trial court

abused its discretion when it transferred to Chris the right to establish the primary residence of the child because there was legally and factually insufficient evidence to support it. *See* TEX.FAM.CODE ANN. § 156.202 (Vernon 1996). Where these two standards of review overlap, as they frequently do in family law cases, we employ a hybrid analysis.

### Standard of Review

In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ). If any probative evidence supports the jury's determination, it must be upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). However, a factual sufficiency point requires examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d at 660; *Lindsey v. Lindsey*, 965 S.W.2d 589, 591 (Tex.App.—El Paso 1998, no pet.). In an appeal from a bench trial, findings of fact are the equivalent of jury answers to special issues. *Lindsey*, 965 S.W.2d at 591. The reviewing court cannot substitute its conclusions for those of the trial court if there is sufficient competent evidence of probative force to support the trial court's findings. *Id.*

▉▉▉▉ A trial court's order modifying a joint managing conservatorship will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982); *Thompson v. Thompson*, 827 S.W.2d 563, 566–67 (Tex.App.—Corpus Christi 1992, writ denied). The test for abuse of discretion is whether the trial court acted in an arbitrary and unreasonable manner, or whether it acted without

reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate justice in a similar circumstance does not demonstrate that an abuse of discretion occurred. *Id.* at 241–42. The question of conservatorship of a child is addressed to the sound discretion of the trial court when it sits as trier of fact. *Jeffers v. Wallace*, 615 S.W.2d 252, 253 (Tex.Civ.App.—Dallas 1981, no writ). The trial court is in the best position to observe the demeanor and personalities of the witnesses and can "feel" the forces, powers, and influences that cannot be discerned by merely reading the record. *Id.* Thus, an abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Valdez v. Valdez*, 930 S.W.2d 725, 731 (Tex.App.—Houston [1st Dist.] 1996, no writ).

An appeal directed toward demonstrating an abuse of discretion is one of the tougher appellate propositions. Most of the appealable issues in a family law case are evaluated against an abuse of discretion standard, be it the issue of property division incident to divorce or partition, conservatorship, visitation, or child support. In some instances, the abuse of discretion standard overlaps the traditional sufficiency review. Several courts have concluded that when the trial court's ruling on the merits is reviewed under an abuse of discretion standard, the normal sufficiency of the evidence review is part of the abuse of discretion review and not an independent ground for reversal. *Crawford v. Hope*, 898 S.W.2d 937, 940–41 (Tex.App.—Amarillo 1995, writ denied)(when standard of review is abuse of discretion, factual and legal sufficiency are not independent grounds of error); *accord, Thomas v. Thomas*, 895 S.W.2d 895, 898 (Tex.App.—Waco 1995, writ denied);

*In the Matter of the Marriage of Driver,* 895 S.W.2d 875, 877 (Tex.App.—Texarkana 1995, no writ); *Wood v. O'Donnell,* 894 S.W.2d 555, 556 (Tex.App.—Fort Worth 1995, no writ); *In the Interest of Pecht,* 874 S.W.2d 797, 800 (Tex.App.—Texarkana 1994, no writ); *but see Matthiessen v. Schaefer,* 897 S.W.2d 825, 828 (Tex.App.—San Antonio 1994)(Duncan, J., dissenting), *rev'd on other grounds,* 915 S.W.2d 479 (Tex.1995)(appellate court should review award of attorney's fees by normal sufficiency of evidence standard, and not subsume sufficiency of evidence into abuse of discretion standard).

We have previously agreed with Justice Duncan's dissenting opinion in *Matthiessen.* In *Lindsey,* 965 S.W.2d at 589, we addressed the conflict between the traditional sufficiency review and the abuse of discretion standard in the context of a child support modification and determined that once it has been determined that the abuse of discretion standard applies, an appellate court should engage in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion? *Lindsey,* 965 S.W.2d at 592. The traditional sufficiency review comes into play with regard to the first question; however, our inquiry cannot end there. *Id.* We must proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable. *Id.; see also, In the Interest of De La Pena,* 999 S.W.2d 521 (Tex. App.—El Paso 1999, no pet.).

### Modification Standards Under
### *TEX.FAM.CODE ANN.*
### § 156.202

Historically, Texas law has tried to ensure stability and continuity for children by imposing significant hurdles to modifications of managing conservatorship. When the Family Code was enacted in 1973, modification of sole managing conservatorship was measured by the now familiar test of a material and substantial change in circumstances, coupled with a best interest test. In 1975, an additional prong was added, requiring a finding that retention of the existing managing conservator would be injurious to the welfare of the child. Twenty years later, the "injurious retention" element, as it had come to be known, was abandoned. Currently, Section 156.101 provides that a court may modify a sole managing conservatorship if the circumstances of the child, sole managing conservator, or possessory conservator have materially and substantially changed, and the appointment of a new sole managing conservator would be a positive improvement for the child.

Joint managing conservatorship was not authorized by statute absent the agreement of the parties until 1987. The standard for modifying a joint managing conservatorship has always been less stringent, allowing a modification in the terms and conditions of the joint managing conservatorship upon a showing of a material and substantial change in circumstances or upon a showing that the decree has become unworkable or inappropriate under the circumstances and upon a showing that the modification would be a positive improvement for and in the best interest of the child.[1] *See*

1. Modification from a joint managing conservatorship to a sole managing conservatorship may be premised on additional elements. The petitioner may show that the child's present living environment may endanger the child's physical health or significantly impair the child's emotional development; there has been a substantial and unexcused violation of the terms and condi-

tions established in the existing conservatorship order; *or* the circumstances of the child or one or both of the joint managing conservators have so materially and substantially changed since the rendition of the order that it has become unworkable or inappropriate under existing circumstances; *and* the appointment of a sole managing conservator would be a positive improvement for and in

TEX.FAM.CODE ANN. § 156.202. As the basis for the motion to modify here, Chris alleged, and the trial court found, that the existing order had become unworkable or inappropriate under the circumstances.

### Existing Joint Managing Conservatorship Inappropriate

#### Cohabitation with Sam Lance

■ Jennifer first argues that the evidence was insufficient to support the court's finding that the cohabitation with Lance rendered the existing order inappropriate. We disagree. From the day he rendered judgment forward, the trial judge explicitly admonished Jennifer that she was not to have unrelated adult males spending the night in the home while Zachary was there. Indeed, the record from the hearing of September 19, 1997, indicates he emphasized that her failure to abide by his restriction would prompt a modification:

> THE COURT: No unmarried males overnight into the home. And ma'am, I'm making that ruling because I have to look after the best interest of the minor child, and I'm finding that's in the best interest of the minor child to have a joint managing conservatorship with you determining primary residence, but we will not have this type of life-style going on with the minor child present. The Court will be very swift in looking at any kind of motions for sanction on—or motion to modify based upon a violation of this ruling.

We emphasize that Jennifer did not challenge the restriction by direct appeal and thus the wisdom or propriety of the non-cohabitation order is not properly before us. Instead, she violated the court's order by cohabitating with Lance while Zachary was in the home, a violation which the trial court found to be knowing and intentional. Jennifer and Lance admitted to cohabitation beginning in June 1998, and, admittedly, Zachary resided with them. Jennifer's defense was that she and Lance had entered into a common law marriage when they began their cohabitation such that she was not cohabitating with an unrelated adult male; she was living with her husband. We address the common law marriage issue below. Assuming the evidence supports the trial court's failure to find the existence of a common law marriage, Jennifer's admissions constitute legally and factually sufficient evidence to support the court's cohabitation finding. Where sufficient evidence supports the finding, we are hard pressed to determine that the trial court abused its discretion.

#### Change of Child's Primary Residence

■ Jennifer contends that she did not violate the previous order because the change of residence was only temporary. She claims that she would have moved back to 3620 North Adams as soon as it became "habitable" again. Temporary or not, the change in address, coupled with the cohabitation with Lance, violated the trial court's orders. In its findings of fact, the trial court noted Jennifer's allegation that she had to move in with Lance because she could not afford any other housing. The trial court was free to disbelieve her testimony, and apparently he did not believe this assertion. This "temporary" move lasted from June 1998 until the hearing on the merits on November 11, 1998, some six months later. Jennifer's father, Joe Arthur Wood, performed the repairs on the house. Chris alleged that Mr. Wood was residing at 3620 North Adams during the time that the residence was supposedly uninhabitable. He introduced photographs indicating that there were no visible repairs in progress and that the house appeared to be inhabited, judging from the Halloween decorations. Mr. Wood testified that he worked on the house off and on during the six month period, sometimes sleeping in the uninhabitable house, and finally residing there for

the best interest of the child. TEX.FAM.CODE ANN. § 156.203.

the three weeks prior to the hearing on the motion.

The trial court had a clearly superior position from which to judge the credibility of these witnesses.[2] As the sole judge of their credibility, he had broad discretion to believe or disbelieve Jennifer's evidence. *See In the Matter of the Estate of McGrew*, 906 S.W.2d 53, 57 (Tex.App.—Tyler 1995, writ denied). It is not within the province of this Court to interfere with the trial court's resolution of the conflicts in the evidence, nor to pass on the weight or credibility of the witnesses' testimony. *Capellen v. Capellen*, 888 S.W.2d 539, 542 (Tex.App.—El Paso 1994, writ denied). There is both legally and factually sufficient evidence to support the trial court's decision. Once again, we cannot conclude that the trial court abused its discretion.

### Common Law Marriage

■■■■ In a similar vein, Jennifer argues that there is no evidence from which the trial court could have concluded that she did not establish a valid common law marriage to Lance. The existence of a common law marriage is not a question of law but a question of fact to be resolved by the trier of fact. *See Welch v. State*, 908 S.W.2d 258, 265 (Tex.App.—El Paso 1995, no pet.). Jennifer had the burden to establish her alleged common law marriage by a preponderance of the evidence. *Id.* Her "no evidence" challenge raises a legal sufficiency question. There are two inquiries for a reviewing court when it applies a legal sufficiency review, where, as here, a party bears the burden of proof and the fact finder fails to find for that party.

*Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). The record must first be examined for evidence that supports the fact finder's failure to find. *See id.* Second, if there is no evidence to support the failure to make a finding, then, "the entire record must be examined to see if the contrary proposition is established as a matter of law." *Id.*

Jennifer claims that she presented testimony which established an agreement to be married, cohabitation, and representation to others that she and Lance were married as of the time they moved into the Spur house together in June 1998. *See* TEX. FAM.CODE ANN. § 2.401 (Vernon 1998). This testimony came from Jennifer herself, Lance, and Mr. Wood. However, Jennifer also testified that she and Lance planned on "officially" getting married the next month[3]; that she had not used the last name of "Lance" on any legal documents; and that she had not notified Chris that she had married Lance. She claimed she had told "[e]verybody I work with, all my friends, family, anybody that we're introduced to." Except for her father, none of these individuals testified. We find it significant that at no point did Jennifer testify that she ever told Zachary that she and Lance were married or that Lance was his stepfather. The record further reveals that at the time of divorce, Jennifer testified that she had no plans to marry Lance.[4]

Lance also testified that he and Jennifer entered into a common law marriage. As for the date of the marriage, he "guessed" it was when they moved in together. He had told everybody he worked with, his

---

2. Jennifer admitted that she had written a number of hot checks in various states and she had been charged with theft by check in Odessa. The trial court was hearing the theft by check matter in a separate criminal proceeding. Also, Mr. Wood admitted he had four or five convictions for theft by check. This evidence may well have prompted the trial court to discount the truth and veracity of their testimony.

3. The record reveals that Jennifer's trial counsel cautioned her about planning a ceremonial marriage for a month after the hearing out of his concern that it would weaken the common law marriage defense.

4. We reiterate that the trial in the divorce occurred in September 1997, although the decree was not signed until December of that year. Thus, Jennifer's contention is that her marital plans changed in the intervening nine months after the trial.

parents, and his friends that Jennifer was his wife. None of these individuals testified.

Mr. Wood testified that Jennifer told him of her plans for a ceremonial marriage to Lance in December 1998. He also indicated that Jennifer and Lance had told him that they were "married" during the summer of 1997, before they moved in together. Wood was unable to repeat the words that they used to convey the message that they were married. He claimed that they represented themselves as married when they leased the house on Spur, but he could not explain why Jennifer did not use the last name of "Lance." He acknowledged, however, that his sister continues to use her maiden name, which is "more and more common."

The trial court heard all of the evidence, but did not believe Jennifer's proofs. She never mentioned her defense of marriage in her response to the motion to enforce and modify. Chris characterized it as a "recent fabrication." From a review of the record, we conclude that there is legally sufficient evidence to support the fact finder's failure to find the existence of a common law marriage. Thus, we cannot say that the trial court abused its discretion.

### Best Interest and Positive Improvement

Next, Jennifer attacks the sufficiency of the evidence to support the trial court's finding that the transfer of the right to establish the primary residence of the child from Jennifer to Chris would be a positive improvement for and in the best interest of the child. As a result, she claims the trial court abused its discretion. She contends that there was no showing that the move to 2609 Spur, and the cohabitation with Lance, had a detrimental effect on Zachary. We reiterate that there is no longer a requirement that the petitioner in a modification establish that the continuation of the existing order is injurious or detrimental to the child. Once he established that the existing order was unworkable or inappropriate, Chris was merely required to demonstrate that modification would be a positive improvement and in the best interest of the child. *See* TEX.FAM.CODE ANN. § 156.202(2). The trial court considered the best interests of the child when it originally ruled that Lance was not to reside with Jennifer when she had possession of Zachary. In fact, the court specifically ordered that Lance vacate the premises at 3620 North Adams within seventy-two hours of the entry of the decree. The court also fashioned its ruling such that Jennifer could not have overnight guests, to whom she was not married, when she had possession of Zachary. The court was concerned about Lance's negative influence on Zachary, Jennifer's ability to support herself and the child, and her ability to pay her bills. The trial court was quite deliberate in considering what was in the best interest of Zachary at the time of divorce and gave Jennifer fair warning of the severity with which he would view a violation. Jennifer acquiesced in his pronouncement and opted not to appeal. Nevertheless, she violated the court's orders and the court's determination of the lifestyle which fostered Zachary's best interest.

The trial court also heard Chris testify as to the living arrangements he would provide for his son. Although at the time of the original divorce proceedings, the court expressed some reservation about his "sketchy employment history," at the time of the modification, Chris had maintained his employment with 7–Eleven for over a year and a half, was working as an assistant manager, and was slated to be promoted to manager, meaning that he would have his "own store." He had explored day care arrangements for Zachary and had considered several providers in the Midland area. He was most interested in Nana's Place, which was located less than a block from his home. In the event he was called to work a rare nighttime shift, he had made arrangements with friends that Zachary could stay with them.

Chris also objected to the methods Lance used to discipline the boy and he professed an objection to spanking. He had never spanked his son.

We conclude that there is both legally and factually sufficient evidence to support the trial court's findings such that we cannot say that the trial court abused its discretion. Accordingly, Jennifer's first two appellate issues are overruled.

### JUDGMENT NUNC PRO TUNC

 In her third issue for review, Jennifer contends that the trial court lacked jurisdiction to enter the judgment nunc pro tunc such that it is void *ab initio,* or in the alternative, that the court had no authority to restrict Zachary's residence to a specific address within Ector County. The purpose of a judgment nunc pro tunc is to correct a clerical error in the judgment after the court's plenary power has expired. *Ferguson v. Naylor,* 860 S.W.2d 123, 126 (Tex.App.—Amarillo 1993, writ denied); Tex.R.Civ.P. 316. The trial court has plenary power to correct a clerical error made in *entering* final judgment, but it cannot correct a judicial error made in *rendering* a final judgment. *Escobar v. Escobar,* 711 S.W.2d 230, 231 (Tex.1986). When deciding whether a correction is a judicial or a clerical error, we look to the judgment actually rendered, not the judgment that should or might have been rendered. *Id.* The court can only correct the entry of a final written judgment that incorrectly states the judgment actually rendered. *Id.* at 231–32. Thus, even if the court renders incorrectly, it cannot alter a written judgment which precisely reflects the incorrect rendition. *Id.* at 232.

 Jennifer argues that the judgment nunc pro tunc corrected a judicial error in rendering judgment, not a clerical error in entering the judgment. She contends that the trial court's oral rendition was ambiguous and as such can only be construed to give her the right to establish Zachary's residence anywhere within Ector County. We disagree. The record reveals that the trial court awarded Jennifer the couple's home at 3620 North Adams. It then granted Jennifer the exclusive right to establish the primary residence of Zachary. A discussion ensued as to removing Lance from the house, and then the following exchange took place between the court and Chris's counsel:

THE COURT: Okay. The child also, I will point out, must reside at that home unless they have prior order of the court. Okay?

COUNSEL: So no change in the residence?

THE COURT: No change in the residence, and that's mainly to secure that that what may be the only asset we have—that it is the only asset that we have that can even be used to benefit the child.

It is clear that the trial court ordered Jennifer to maintain Zachary's residence at 3620 North Adams unless she received prior court approval to relocate the child's residence. Such was the judgment rendered. The judgment entered erroneously states that Jennifer had the right to establish the child's residence anywhere within Ector County. The judgment nunc pro tunc sought to correct an error in *entering* the court's rendition, thus, we find no error here.

 Jennifer argues, in the alternative, that pursuant to Section 153.134, the trial court had no authority to restrict the child's residence to 3620 North Adams. That provision states that "[i]n rendering an order appointing joint managing conservators, the court shall: establish the county of residence of the child until altered by further order, or designate the conservator who has the exclusive right to determine the primary residence of the child." Tex.Fam.Code Ann. § 153.134(b)(1)(Vernon 1996). Jennifer is correct that this section is mandatory, but it is only mandatory in the sense that any order entered by the trial court appointing a joint managing conservatorship must

contain language delineating the various rights and duties of the conservators listed under Section 153.134(b). The list of rights and duties is not exclusive, nor does it define how the trial court shall assign or implement those rights and duties. The trial court retains broad discretion in crafting the rights and duties of each conservators so as to effectuate the best interest of the child. *See* TEX.FAM.CODE ANN. § 153.134(a). In addition, the Family Code also provides that "[i]f a joint managing conservatorship is ordered, the best interest of the child ordinarily requires the court to designate a primary *physical* residence for the child." [Emphasis added]. *See* TEX.FAM.CODE ANN. § 153.136. Lastly, unless the provisions of the judgment nunc pro tunc are void, Jennifer cannot collaterally attack it. Her remedy was to pursue a direct appeal. We have already rejected her contention that the judgment is void. We likewise reject her alternative argument because it constitutes a collateral attack. The third issue for review is overruled, and the judgment of the trial court is affirmed.