Criminal Case Template












COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



LAURIE LONG,


 Appellant,


v.


CURTIS LONG,


 Appellee.

§


§


§


§


§

No. 08-02-00225-CV


Appeal from the


143rd Judicial District Court


of Reeves County, Texas


(TC# 00-03-16659-CVR)


O P I N I O N


 This is an appeal from a suit to modify parent-child relationship. For the reasons
stated, we affirm.

I. SUMMARY OF THE EVIDENCE


 Appellant, Laurie Long, and Appellee, Curtis Long, were divorced June 2, 2000, in
Reeves County. Pursuant to the decree of divorce, Laurie and Curtis were appointed joint
managing conservators of their two daughters, Dakota Lynn and Sierra Morgan (collectively
"the girls"). Laurie was given the right to determine domicile. The decree included a
standard possession order for visitation rights and general terms and conditions of visitation. 
Curtis was ordered to pay child support in the amount of $600 a month. 

 On August 31, 2001, Curtis filed a petition seeking modification of the parties' joint
managing conservatorship awarding him the exclusive right to establish the primary
residence of the children and the right to receive child support, or in the alternative, sole
managing conservatorship. Laurie filed a general denial and also filed a petition seeking
modification of the parties' joint managing conservatorship seeking an increase in Curtis'
child support payments. 

 A bench trial was held on January 17, 2002 and on March 21, 2002. In its April 5,
2002 order, the trial court found that modification was in the best interest of the girls and
continued the parties' joint managing conservatorship. However, Curtis was awarded the
exclusive right to establish the primary residence of the girls without regard to geographic
location and the right to receive child support. Laurie was also ordered to provide medical
support for the girls.

 Laurie filed a motion for new trial which was denied by the trial court. Laurie timely
filed a notice of appeal. No findings of fact were requested or entered. 

II. DISCUSSION


 Laurie presents two issues on appeal. She first challenges the legal and factual
sufficiency of the evidence to support the modification. In her second issue, Laurie alleges
the trial court abused its discretion in modifying the parties' joint managing conservatorship
of the children because the evidence was legally and factually insufficient.


A. Standards of Review

 Where, as here, the sufficiency-of-the-evidence and abuse-of-discretion standards of
review overlap, as they frequently do in family law cases, appellate courts employ a hybrid
analysis. Jenkins v. Jenkins, 16 S.W.3d 473, 477 (Tex. App.--El Paso 2000, no pet.).

 In considering the legal sufficiency of the evidence, an appellate court considers only
the evidence that supports the trial court's findings and disregards all evidence and inferences
to the contrary. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); Jenkins, 16 S.W.3d at
477. If any probative evidence supports the jury's determination, it must be upheld. In re
King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661-62 (1951). In reviewing factual
sufficiency, we examine all the evidence and reverse only if the trial court's finding is so
against the great weight and preponderance of the evidence as to be manifestly unjust. 
King's Estate, 244 S.W.2d at 660; Lindsey v. Lindsey, 965 S.W.2d 589, 591 (Tex. App.--El
Paso 1998, no pet.). In an appeal from a bench trial, findings of fact are the equivalent of
jury answers to special issues. Lindsey, 965 S.W.2d at 591. The reviewing court cannot
substitute its conclusions for those of the trial court if there is sufficient competent evidence
of probative force to support the trial court's findings. Id. When findings of fact and
conclusions of law are not properly requested and none are filed, the judgment of the trial
court must be affirmed if it can be upheld on any legal theory that finds support in the
evidence. In re W.E.R., 669 S.W.2d 716, 717 (Tex. 1984). In the absence of findings and
conclusion, the judgment of the trial court implies all necessary fact findings in support of
the judgment. Id.

 A trial court's order modifying a joint managing conservatorship will not be disturbed
on appeal unless the complaining party can show a clear abuse of discretion. Gillespie v.
Gillespie, 644 S.W.2d 449, 451 (Tex. 1982); Jenkins, 16 S.W.3d at 477. The test for abuse
of discretion is whether the trial court acted in an arbitrary and unreasonable manner, or
whether it acted without reference to any guiding principles. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985), cert. denied, 476 U.S. 1159, 106 S.Ct.
2279, 90 L.Ed.2d 721 (1986). The fact that a trial court may decide a matter within its
discretionary authority in a different manner from an appellate court in a similar circumstance
does not demonstrate an abuse of discretion. Downer, 701 S.W.2d at 241-42. The question
of conservatorship of a child is left to the sound discretion of the trial court when it sits as
trier of fact. Jeffers v. Wallace, 615 S.W.2d 252, 253 (Tex. Civ. App.--Dallas 1981, no writ).
The trial court is in the best position to observe the demeanor and personalities of the
witnesses and can "feel" the forces, powers, and influences that cannot be discerned by
merely reading the record. Id. Thus, an abuse of discretion does not occur as long as some
evidence of a substantive and probative character exists to support the trial court's decision. 
Jenkins, 16 S.W.3d at 477 (citing Valdez v. Valdez, 930 S.W.2d 725, 731 (Tex. App.--Houston [1st Dist.] 1996, no writ)).

 Once it has been determined that the abuse-of-discretion standard applies, an appellate
court engages in a two-pronged inquiry: (1) whether the trial court had sufficient information
on which to exercise its discretion; and (2) whether the trial court erred in its application of
discretion. Lindsey, 965 S.W.2d at 592. The traditional sufficiency review comes into play
with regard to the first question; however, the inquiry does not end there. Id. The appellate
court then proceeds to determine whether, based on the elicited evidence, the trial court made
a reasonable decision. Id. Stated inversely, the appellate court must conclude that the trial
court's decision was neither arbitrary nor unreasonable. Id.; see also, In re De La Pena, 999
S.W.2d 521 (Tex. App.--El Paso 1999, no pet.).

 Family Code Section 156.101 specifies that a court may modify an order that provides
for the appointment of a conservator of a child if modification would be in the best interest
of the child and the circumstances of the child, a conservator, or other party affected by the
order have materially and substantially changed since the rendition of the order. Tex. Fam.
Code Ann. § 156.101 (Vernon 2002). The Legislature has made clear that "[t]he best
interest of the child shall always be the primary consideration of the court in determining the
issues of conservatorship and possession of and access to the child." Tex. Fam. Code Ann.
§ 153.002 (Vernon 2002). Courts may use the nonexhaustive list of Holley factors to
determine the child's best interest. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976);
see also In re Doe 2, 19 S.W.3d 278, 300 n.20 (Tex. 2000) (recognizing that intermediate
courts employ the Holley factors to ascertain best interest in conservatorship cases). Those
factors include, but are not limited to: 

(A) the desires of the child; 


(B) the emotional and physical needs of the child now and in the future; 


(C) the emotional and physical danger to the child now and in the future; 


(D) the parental abilities of the individuals seeking custody; 


(E) the programs available to assist these individuals to promote the best
interest of the child; 


(F) the plans for the child by these individuals or by the agency seeking
custody; 


(G) the stability of the home or proposed placement; 


(H) the acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and 


(I) any excuse for the acts or omissions of the parent. 


Holley, 544 S.W.2d at 371-72. The Texas Supreme Court expressly stated in Holley, and
recently reiterated in In re C.H., that these considerations are not exhaustive. In re C.H., 89
S.W.3d 17, 27 (Tex. 2002); Holley, 544 S.W.2d at 371-72. In the context of custody
modification, other factors to be considered include the child's need for stability and the need
to prevent constant litigation in child custody cases. In re V.L.K., 24 S.W.3d 338, 343 (Tex.
2000). In the specific context of relocation litigation, additional factors to be considered
include, but are not limited to, the following:


 the degree to which the custodial parent's and the child's life may be
enhanced economically, emotionally, and educationally by the move;

 a comparison of the quality of lifestyle; 

 the negative impact of any continued hostility between the parents; 

 the effect of the move on extended family relationships; and 

 the child's age, community ties, health and educational needs, and
preferences. 



Bates v. Tesar, 81 S.W.3d 411, 434 (Tex. App.--El Paso 2002, no pet.). 

B. Application of Best Interest Factors

 Prior to addressing these factors, we note and emphasize, that the record does not
show that findings of fact or conclusions of law were either requested or filed. In a non-jury
trial where no findings of fact or conclusions of law are filed or properly requested, it is
implied that the trial court made all necessary findings to support its judgment. Pharo v.
Chambers County, Texas, 922 S.W.2d 945, 948 (Tex. 1996); Roberson v. Robinson, 768
S.W.2d 280, 281 (Tex. 1989). As noted previously, in the absence of findings and
conclusion, the judgment of the trial court implies all necessary fact findings in support of
the judgment. In re W.E.R., 669 S.W.2d at 717. We also note that the trial court interviewed
the children in chambers but that no record of their conversation was made. Without a
record, we must presume facts existed that allowed the trial judge to find that a change in the
girls' primary residence was in their best interest. Voros v. Turnage, 856 S.W.2d 759, 763
(Tex. App.--Houston [1st Dist.] 1993, writ denied) (holding, in a custody suit, that the failure
of a party to request a record of an interview of a child in chambers waives the requirement
and that the reviewing court will presume the evidence is sufficient to support the judge's
findings).

(1) The desires of the children

 The trial court interviewed the children in chambers but no record of their
conversation was made. Curtis offered drawings made by the girls which he alleged reflected
their desires as to where they wanted to live. Laurie's trial counsel objected and the trial
court stated that it would wait to "see if they are useful if the children are interviewed." The
trial court failed to rule on the objection and never admitted the exhibits into evidence. 
Laurie subsequently filed a motion to strike the exhibits from the reporter's record. This
Court granted the motion on March 7, 2003. Thus the only evidence of the girls' desires
regarding conservatorship was that of Curtis' wife, Jessie. Jessie testified that the girls have
always indicated they are happy when they are with them in Pecos. She stated that the girls
enjoy their visits and are sometimes sad when they have to leave. 

(2) The emotional and physical needs of the children now and in the future

 Curtis testified that when the girls are with him, they enjoy activities such as riding
bikes and horses, playing tennis and soccer, and going camping, roller blading and
swimming. Jessie testified that they have made preparations for the girls with prospective
school personnel. Curtis and Jessie have prepared a room in their home for the girls as well.
Curtis testified that the girls were healthy. Curtis' mother, Janice Long, testified that Jessie
is a positive and calm person who works with the children and that she was dedicated to the
family. Curtis testified that the girls would not attend daycare if they lived with him because
Jessie's work day ended at 3 p.m. and she would be able to pick them up from school and
care for them. 


 Several witnesses testified the physical needs of the girls were being met by Laurie.
Laurie's brother, Jason Sharp, testified that Laurie and the girls had a good relationship, that
the girls were healthy, well-adjusted and active. Emily Ann Hogue, Laurie's aunt, described
Laurie as a normal, loving mother. Hogue testified that the girls appeared happy, loving,
well-adjusted, healthy and active. She stated there was nothing she had seen or heard that
would indicate the girls were not perfectly safe with Laurie. Laurie testified that the YMCA
bus picked the girls up from school each day and took them to the YMCA until she arrived
to pick them up, usually by 5 p.m. 

(3) The emotional and physical danger to the children now and in the future

 The only evidence of any physical danger was the testimony of Curtis that on one
occasion, Dakota complained that her feet were hurting and he noticed that her shoes were
too small. He purchased larger shoes. Laurie testified Dakota had never complained to her
that the shoes were too little. She stated that Dakota did not want to wear the shoes that
Curtis purchased. In fact, Dakota was wearing the "old" shoes the day of the hearing. 

(4) The parental abilities of the individuals seeking custody 

 There was an abundance of evidence introduced regarding the parental abilities of
Curtis, Laurie and Jessie. Curtis and his mother, Janice, testified that his parenting skills had
improved since the divorce. The witnesses who had contact with Laurie testified she
exhibited excellent parenting skills and that the girls were her first priority. Jessie was the
only witness who questioned Laurie's parental abilities. Jessie testified, "I don't know that 
I would call her a bad mother. I feel like there are some things that she could do to improve
maybe what the girls express to me." She went on to say that she "had some concerns" as
to whether Laurie provided for the girls in every way possible.

(5) The programs available to assist these individuals to promote the best interest of the
children


 Curtis presented no evidence that different or better programs were available in Pecos
than those in Odessa. Curtis and Jessie testified they planned to enroll the girls in tennis and
swimming lessons. Laurie testified that she planned to enroll the girls in soccer and
gymnastics in the Spring of 2002. The girls were involved in Awanas Club on Wednesday
nights at Sunset Heights Baptist Church and attended Sunday services with Laurie there as
well. The elementary school the girls attended, Noel Elementary, had a good academic
program and both girls were making A's and B's. 

(6) The plans for the children by the individuals seeking custody

 Both Curtis and Laurie testified they would encourage the girls relationship with the
other parent. Both stated they would make the girls a priority in their respective lives. Both
planned to enroll or keep the girls enrolled in a school with strong academic programs. Both
testified that the girls would be enrolled in extracurricular activities. 

(7) The stability of the home or proposed placement 

 Witnesses for both Laurie and Curtis testified they each maintained good, stable
homes. Laurie's witnesses testified that it was in the best interest of the girls to remain living
with her in Odessa.

(8) The acts or omissions of the parent which may indicate that the existing parent-child
relationship is not a proper one; and (9) any excuse for the acts or omissions of the
parent


 There was no evidence introduced of an act or omission by either party. 

 

 Given the standard of review under which we must work, we find there is legally and
factually sufficient evidence, however slight, to support the trial court's order. Without
findings of fact and conclusions of law, the judgment of the trial court implies all necessary
fact findings in support of the judgment. In re W.E.R., 669 S.W.2d at 717. Considering that
the trial court interviewed the children in chambers, we must presume facts existed to support
the modification and that allowed the judge to find that change in the girls' primary residence
was in their best interest. Accordingly, the trial court did not abuse its discretion. Issues No.
One and Two are overruled and the judgment of the trial court is affirmed. (1)

June 17, 2004



 

 RICHARD BARAJAS, Chief Justice


Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ. 
1. Given the standard of review and our disposition of the issues, we need not address the relocation factors.