# NO. 12-20-00247-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|  |  |  |
|---|---|---|
| *IN THE INTEREST OF H.L.H.,* | § | *APPEAL FROM THE* |
| *A CHILD* | § | *COUNTY COURT AT LAW NO. 2* |
|  | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

R.H., the father of the minor child H.L.H., appeals from the trial court's order modifying his child support obligation. R.H. raises six issues for our consideration. We affirm the trial court's judgment.

## BACKGROUND

R.H. and Appellee, L.A.G., married in 2006, and one child, H.L.H., was born of the marriage. In 2009, the trial court signed a final decree of divorce, in which it ordered R.H. to pay child support in the amount of $400 per month. In October 2012, an order was entered that required R.H. to pay child support in the amount of $493 per month. In said order, the trial judge determined that R.H.'s gross monthly resources were $3,076.68 and his net monthly resources were $2,513.47. The 2012 order also reflects that the trial court found that the appropriate percentage under the guidelines was 20% of R.H.'s net resources. On December 31, 2019, L.A.G. filed a petition to modify the parent-child relationship, in which she asserted that "[t]he circumstances of the child or a person affected by the order have materially and substantially changed since the date of the rendition of the order to be modified[]" and requested that R.H.'s child support obligation be increased. L.A.G. contended that the requested modification is in the best interest of the child. R.H. asserted a general denial and sought attorney's fees and expenses.

On August 25, 2020, the trial court conducted an evidentiary hearing on the matter. Lisa Rader testified that she operates Accurate Business Services, and she has prepared R.H.'s tax

returns for approximately five years. Rader explained that R.H. uses QuickBooks and classifies his bank transactions in that program, and she adds any new assets purchased, calculates depreciation, and makes adjustments for mileage without auditing the information R.H. provides. According to Rader, she takes the numbers R.H. provides at face value and does not review R.H.'s bank statements. When asked whether R.H. could be deducting personal expenses as business expenses, Rader testified that he "could be." Rader explained that R.H.'s personal finances and his finances from his building and remodeling business are both included on his personal tax return. Rader testified that R.H. made over $60,000 for installing fireplaces for his parents' business in 2017, 2018, and 2019.

According to Rader, R.H.'s gross sales and receipts totaled $1,107,570 in 2018, but R.H. lost approximately $10,000, paid zero income tax, and received a tax refund of approximately $6,600. Rader stated that R.H. wrote off $16,953 for business mileage, $571,545 for labor, $495,017 for materials and supplies, and $7,246 for other costs. Rader explained that in 2018, accounting for mileage and depreciation, R.H. made approximately $15,000. The 2018 income tax return Rader prepared for R.H. and his current wife reflects an adjusted gross income of $22,042 and "$0.00" federal taxable income. R.H.'s 2018 income tax return also indicates that he claimed depreciation for his Ford F350, office furniture, several trailers, a tractor, a mower, and a "2018 EZ GO[.]" Rader testified that in 2020, R.H. purchased a new truck for $68,497 after trading in a 2019 truck.

R.H. testified that he builds custom homes and does remodeling work, and he also installs fireplaces for his parents' business. R.H. testified that he uses his parents' employees when he does work for them, but he sometimes takes a helper with him. R.H. explained that he does not build speculation homes, and he only uses subcontractors that he selects. R.H. testified that he usually makes a profit of ten percent from building new homes if he bids them correctly. According to R.H., in 2018, he and his wife had an adjusted gross income of $22,042 and received a tax refund of $6,549. When asked whether he deducted any personal expenses, R.H. responded, "[n]othing out of the ordinary[,]" and when asked whether he deducted anything that was not business related as a business expense, R.H. responded, "nothing that's of any significance."

When asked how he remains in business when he is losing $10,000 per year, R.H. testified that he has invested in equipment and tools, and he will not be losing money "down the road[.]" According to R.H., he has purchased equipment for cleanup, trenching, grading, bush hogging,

and mowing, and he writes off his tractor on his income taxes. R.H. testified that the note for his 2,464-square-foot home is $1,750 per month, and he also owns a 1,064-square-foot metal building for his equipment and other tools, as well as a mother-in-law cottage. R.H. explained that he pays property taxes of $400 per month and approximately $1,000 per year for insurance. When asked whether he pays the monthly bills for his house through his business, R.H. responded, "not everything[,]" and he testified that he pays his home electric bill and water bill from his business funds because he has an office in his home. R.H. also testified that he pays for his cell phone and his wife's cell phone and writes off those costs as business expenses. Additionally, R.H. testified that he writes off his fuel costs as a business expense.

R.H. testified that he purchased six lots at the beach for $95,000, and he made a down payment of $15,000 on the lots. R.H. stated that he obtained cash for the down payment on the beach property by selling a piece of equipment. R.H. explained that his wife drives a 2018 Chevy Tahoe that cost over $50,000, and he also pays $700 per month for his Kubota excavator and $330 per month for his tractor. R.H. further testified that he purchased a $50,000 recreational vehicle, which costs $600 per month, as well as a personal motorcycle, dirt bikes for his children, and a golf cart. According to R.H., his owner's draw from his business was approximately $2,000 per month during 2018.

When asked how he supports his lifestyle while losing $10,000 per year, R.H. testified that his daughter "enjoy[s] the beach lot, the camper, the dirt bikes, [and] the golf cart," and he asked counsel, "I guess I shouldn't have that for her?" Counsel asked Appellant how he could explain not paying any taxes, and R.H. testified, "[w]e've discussed the write-offs, the expenses that it takes . . . to run the business." R.H. also stated, "I've given you . . . every item that you've requested. You had your time to look at every single thing. I haven't denied any documents. . . . I'm not sure where you keep going with that." R.H. testified, "You're assuming that . . . I make my percentage every time 100 percent, and that's not necessarily true." L.A.G.'s counsel asked R.H. where he obtained the money to pay $5,000 to $6,000 per month for non-business expenses when he grossed over a million dollars, but paid subcontractors $571,545, paid $495,017 for materials and supplies, and had other costs of $7,246, and R.H. responded, "everything[] on there's correct like it is." R.H. testified that although he is losing money, he withdraws $493 from his account each month to pay child support.

3

According to R.H., his current wife pays for groceries, gasoline, and her vehicle from her salary, and the only expense of his wife's that his business writes off is her cell phone. R.H. testified that he provides Rader accurate information from QuickBooks, and he explained that he has sometimes taken out loans to keep his business afloat. R.H. estimated that he withdraws $2,000 to $3,000 from his account each month, including his expenses for his house note, as well as the notes for his beach property and camper. R.H. testified that he does not make enough rental income from his beach property "to amount to anything[,]" but the rental income helps him pay for the property's utilities. R.H. also explained that he has a partner in the beach property venture, and his partner pays for some of the expenses associated with the beach property. R.H. explained that although he has an office in his home, he does not write off any portion of his house note, but he does write off some of his expenses for utilities.

L.A.G. testified that R.H. currently pays child support in the amount of $493 per month and pays for the child's insurance, and she explained that child support has not been adjusted since 2012. L.A.G. explained that she does not believe R.H.'s tax returns are truthful because "you can't live the way that he does and lose money, have the things that he does, buy the things that he does. You just can't do that losing money." According to L.A.G., she started a review process with the Attorney General's Office because R.H. "refuses to help with anything[,]" and anytime the child asks R.H. for something, he tells her, "I pay child support for that[.]" L.A.G. testified that the Attorney General's response proposing that R.H.'s child support obligation be reduced based upon his tax returns "was not feasible," so she "had no other option but to hire a lawyer." L.A.G. stated that she believes R.H. makes over $10,000 per month based upon his lifestyle. When asked to point to a particular exhibit supporting her claim, L.A.G. testified, "[e]very single bank statement in there." According to L.A.G., the income R.H. reported to the IRS is "a lie[.]" L.A.G. testified that her current husband makes between $130,000 and $150,000 annually, yet R.H. spends more money than she does.

In a letter ruling, the trial court found that R.H.'s net monthly resources were $8,051.46, applied a percentage rate of 17.5%, and ordered R.H. to pay child support of $1,409 per month, and the trial judge signed an order to that effect. The trial judge stated in his letter ruling that R.H.'s lifestyle "is completely inconsistent with his claimed absence of income[]" and "[i]t is obvious from the testimony that he is deducting the ordinary expenses of living as a business expense." The trial court made its order retroactive to the date R.H. was served with the motion

to modify. The trial judge concluded in the order that "the material allegations in the petition to modify are true" and "the requested modification is in the best interest of the child."

R.H. requested findings regarding his net resources, the percentage the trial court applied to his net resources, and the reasons why the amount of child support ordered by the trial court varied from the guidelines under Sections 154.125 or 154.129 of the Texas Family Code. The trial court signed findings of fact, in which it found, among other things, that (1) R.H.'s business manager did not have access to checks, receipts, or bills; rather, she had access to Excel spreadsheets that contained information supplied by R.H.; (2) R.H. reported a gross income of $1,107,570; (3) R.H. had made over $60,000 per year for three years installing fireplaces for his parents' business; (4) R.H. and his current wife own a 2,400-square-foot home and a mother-in-law cottage on 6.2 acres of land; (5) R.H. purchased a 2020 pickup truck, a golf cart, motorcycles, a camper-trailer, and beach property; (6) R.H.'s living expenses "far exceed his reported income" and R.H.'s child support should be increased; (7) R.H. "was uncooperative and evasive in his testimony" and there is "no credible evidence to support [Appellant's] claimed low income amount[;]" (8) if R.H. built three houses per year, he should realize a ten-percent profit of $90,000; (9) R.H.'s income could also be estimated as ten percent of his $1,107,570 reported gross income; (10) "using a conservative calculation of [R.H.'s] gross income at $11,500 per month as a self-employed person, [R.H.'s] net monthly resources" based on Section 154.061 of the Texas Family Code are $8,051.46, and multiplying that number by 17.5% yields $1,409 per month as the amount of child support; and (11) using the chart for self-employed persons in Section 154.061 of the Family Code would give R.H. "credit for taxes he did not pay." In addition, the trial court found that R.H. did not supply any information regarding his expenses for food, automobile insurance, recreation, lawn care, home maintenance, fuel, healthcare, dental care, furniture, cable, phone, or internet. The trial court also signed conclusions of law, in which it found that R.H. should be required to pay child support based upon the guidelines in the Texas Family Code; R.H.'s wife's income should not be included in calculating R.H.'s net disposable income; the appropriate guideline percentage is 17.5%; and R.H. should pay child support in the amount of $1,409.00 pursuant to the guidelines. This proceeding followed.

## MATERIAL AND SUBSTANTIAL CHANGE IN FINANCIAL CIRCUMSTANCES

In issue one, R.H. contends the trial court abused its discretion by modifying his child support obligation without a showing that his financial circumstances had materially and substantially changed. Specifically, R.H. maintains that L.A.G. did not meet her burden as the movant for modification because the record did not contain historical and current evidence of R.H.'s financial circumstances. In issue five, R.H. argues that the trial court erred by modifying his child support obligation when L.A.G. failed to produce documents or testimony "beyond a scintilla[.]" In issue six, R.H. contends the trial court erred by modifying his child support obligation when L.A.G. failed to demonstrate that he had more income than he claimed or that "specific expenses [R.H.] took against his company's gross revenues were not legitimate." Because these issues involve determining whether the trial court abused its discretion in modifying R.H.'s child support obligation based upon the evidence before it, we address them together.

**Standards of Review**

Issues one, five, and six involve two different standards of review: abuse of discretion and the traditional evidentiary sufficiency standard. *See Lindsey v. Lindsey*, 965 S.W.2d 589, 591-92 (Tex. App.—El Paso 1998, no pet.). Because the standards overlap in this family law proceeding, we apply a hybrid analysis. *Jenkins v. Jenkins*, 16 S.W.3d 473, 477 (Tex. App.—El Paso 2000, no pet.). A trial court has broad discretion in modifying child support payments, but the trial court abuses its discretion if it acts arbitrarily and unreasonably, without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *In re A.M.W.*, 313 S.W.3d 887, 890 (Tex. App.—Dallas 2010, no pet.). Under the abuse of discretion standard of review, legal and factual sufficiency of the evidence are not independent issues; rather, they are relevant facts in assessing whether the trial court abused its discretion. *In re Ferguson*, 927 S.W.2d 766, 769 (Tex. App.—Texarkana 1996, no writ). In determining whether the trial court abused its discretion because the evidence is legally or factually insufficient, we conduct a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion, and (2) whether the trial court erred in its application of discretion. *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied).

The trial court does not abuse its discretion when it merely decides a matter within its discretion differently than an appellate court would in a similar circumstance. *Downer*, 701 S.W.2d at 242. When some substantive and probative evidence supports the trial court's decision,

the trial court has not abused its discretion. *In re B.A.W.*, 311 S.W.3d 544, 550 (Tex. App.—El Paso 2009, no pet.). We will reverse a trial court's modification order only when it appears from the entire record that the trial court abused its discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).

We review a trial court's findings of fact for legal and factual sufficiency of the evidence using the same standards that are applied in reviewing the evidence supporting a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We indulge every reasonable inference that would support the trial court's findings. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The factfinder "is the sole judge of the credibility of the witnesses and the weight to give their testimony." *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *City of Keller*, 168 S.W.3d at 819). We give due deference to the factfinder's findings, and we may not substitute our judgment for that of the factfinder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We may not weigh the credibility of the witnesses or interfere with the factfinder's resolution of any conflicts in the evidence. *In re M.S.G.*, No. 14-16-00236-CV, 2017 WL 3611907, at *8 (Tex. App.—Houston [14th Dist.] Aug. 22, 2017, no pet.) (mem. op.). A party challenging the legal sufficiency of the evidence supporting an issue on which he did not have the burden of proof must demonstrate that no evidence supports the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). In considering the legal sufficiency of the evidence after a bench trial, we view the evidence in the light most favorable to the trial court's findings, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 807. The final test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the decision under review. *Id*. at 827. In considering the factual sufficiency of the evidence to support a finding on which the Appellant did not have the burden of proof, we examine all the evidence, and we will "set aside the [finding] only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

**Applicable Law**

A trial court may modify a child support order if the circumstances of the child or a person affected by the order have materially and substantially changed since the order was rendered. TEX.

FAM. CODE ANN. § 156.401(a)(1)(A) (West Supp. 2020). In determining whether a material and substantial change in circumstances has occurred, the trial court must compare the affected party's circumstances when the support order was entered with his circumstances when the modification was sought. **London v. London**, 94 S.W.3d 139, 144 (Tex. App.—Houston [14th Dist.] 2002, no pet.). A trial court's decision regarding whether circumstances have materially and substantially changed is fact specific. **In re A.M.W.**, 313 S.W.3d at 891. The movant bears the burden of demonstrating a material and substantial change. **Id**.

**Analysis**

With respect to R.H.'s circumstances when the previous support order was entered, the record reflects that in 2012, when the trial court increased R.H.'s child support obligation from $400 to $493 per month, the trial court found that R.H.'s monthly net resources were $2,513.47. A trial court is presumed to judicially know what has taken place in the case tried before it; therefore, the parties need not prove facts that a trial court judicially knows. **In re J.E.H.,** 384 S.W.3d 864, 869 (Tex. App.—San Antonio 2012, no pet.). When the record is silent, this court may presume that the trial court took judicial notice of its own records "without any request being made and without an announcement in the record that it has done so." **Id**. at 869-70.

With respect to R.H.'s financial circumstances when L.A.G. sought modification of his child support obligation, the trial court heard evidence that R.H. (1) made approximately $60,000 per year installing fireplaces for his parents' business; (2) pays a house note of $1,750 per month; (3) pays property taxes of $400 per month; (4) pays $1,000 annually for insurance; (4) deducts his home utility bills, as well as the cost of his and his wife's cell phones, as business expenses; (5) writes off his fuel costs as a business expense; (6) purchased beach property for $95,000; (6) pays $700 per month for his excavator and $330 per month for his tractor; (7) purchased a $50,000 recreational vehicle for $600 per month; (8) purchased dirt bikes for each of his children; and (9) drew approximately $2,000 monthly from his homebuilding and remodeling business. In addition, the trial court heard evidence that R.H.'s gross income in 2018 was $1,107,570, and although R.H. obtained an extension and therefore had not yet filed his 2019 tax return, he expected his income for 2019 to be comparable. Moreover, the trial court heard evidence that R.H. builds three to four homes per year, and R.H. generally expects to make a profit of ten percent if he bid the projects correctly. The trial court specifically stated in its findings and conclusions that it found R.H. uncooperative and evasive as a witness. The trial court determined that R.H.'s net monthly

resources are $11,500 per month (*i.e.*, R.H.'s net monthly resources had increased by $8,986.53 since the 2012 order was entered).

Viewing the entire record, we conclude that substantive and probative evidence supports the trial court's decision; that is, the trial court had sufficient information upon which to exercise its discretion and did not err in its application of discretion. *See Gillespie*, 644 S.W.2d at 451; *In re B.A.W.*, 311 S.W.3d at 550; *In re T.D.C.*, 91 S.W.3d at 872; *see also In re M.S.G.*, 2017 WL 3611907, at *8. A reasonable and fair-minded factfinder could have reasonably concluded that R.H.'s financial circumstances materially and substantially changed since entry of the 2012 child support order. *See* TEX. FAM. CODE ANN. § 156.401(a)(1)(A). Furthermore, the trial court's findings are not so contrary to the overwhelming weight of the evidence that they are clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. Accordingly, we overrule issues one, five, and six.

### CALCULATION OF FINANCIAL RESOURCES

In issue two, R.H. argues that the trial court abused its discretion in calculating his net resources under Sections 154.062 and 154.065 of the Texas Family Code. In issue three, R.H. asserts that the trial court erred by failing to reveal how it calculated his gross income and net resources in its findings of fact and conclusions of law. In issue four, R.H. contends the trial court erred by specifically finding that R.H.'s gross annual income was $138,000 when it also found that R.H.'s income could be more than $181,000. We address these issues together.

### Standards of Review

As detailed above in our discussion of issues one, five, and six, this proceeding involves both the abuse of discretion standard of review and the traditional evidentiary sufficiency standard, and we therefore apply a hybrid analysis. *See Lindsey*, 965 S.W.2d at 591-92; *Jenkins*, 16 S.W.3d at 477. Under the abuse of discretion standard of review, legal and factual sufficiency of the evidence are not independent issues, but they are relevant in assessing whether the trial court abused its discretion. *In re Ferguson*, 927 S.W.2d at 769. The factfinder is the sole judge of witnesses' credibility and the weight to give their testimony. *Jordan*, 325 S.W.3d at 713. The factfinder may believe one witness and disbelieve another. *City of Keller*, 168 S.W.3d at 819. In an appeal from a bench trial, we review a trial court's findings of fact for legal and factual sufficiency of the evidence using the same standards that are applied in reviewing the evidence supporting a jury's findings. *Catalina*, 881 S.W.2d at 297. We may not substitute our judgment

for that of the factfinder. *Jackson*, 116 S.W.3d at 761; *In re H.R.M.*, 209 S.W.3d at 108. We review a trial court's conclusions of law de novo. *In re J.M.C.*, 395 S.W.3d 839, 844 (Tex. App.—Tyler 2013, no pet.).

**Applicable Law**

A child support order that conforms to the statutory guidelines is presumed to be in the child's best interest; however, a trial court "may determine that application of the guidelines would be unjust or inappropriate under the circumstances." TEX. FAM. CODE ANN. § 154.122(a), (b) (West 2014). Among the factors the trial court may consider in determining whether the guidelines are not appropriate under the circumstances are the parents' ability to contribute to the support of the child; whether the obligor or obligee has an automobile, housing, or other benefits furnished by a business entity; positive or negative cash flow from any real and personal property and assets, including business and investments; and "any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents." *Id*. § 154.123(b)(2), (10), (15), (17). Section 154.062 of the Family Code provides that, for the purpose of calculating an obligor's net resources to determine child support liability, resources include 100% of all wage and salary income, self-employment income, net rental income, and "all other income actually being received[.]" *Id*. § 154.062(a), (b) (West Supp. 2020). Self-employment income includes benefits allocated to an individual from a business, "less ordinary and necessary expenses to produce that income." *Id*. § 154.065(a) (West 2014). Upon receiving a written request for findings, a trial court must state the obligor's net monthly resources, the percentage applied to the obligor's net resources for child support, and whether applying the child support guidelines would be just. *Id*. § 154.130(a), (b) (West Supp. 2020).

**Analysis**

R.H. asserts that the trial court made "many incorrect assumptions" and findings in determining his gross income that are "disproven by undisputed facts in the record[,]" such as (1) the amount of R.H.'s current wife's salary; (2) concluding that monthly expenses of $5,159 indicated excessive spending; (3) the amount R.H. financed for a new pickup truck; (4) R.H.'s living expenses exceed his reported $22,042 income; (5) it is unlikely that a bank or financial institution would loan R.H. money for a home or vehicle based on the amount of his reported income; (6) R.H. would make a profit of ten percent if he built three or four homes per year; (7) conclusions of law one and four, which stated that the trial court based the amount of R.H.'s child

support obligation on the statutory guidelines; (8) the trial court's finding of R.H.'s gross annual income as $138,000 was arbitrary and made without reference to any guiding principles; and (9) the trial court speculated that R.H.'s actual income "could be greater than $181,000 per year[,]" yet found that R.H.'s annual income was $138,000 (*i.e.* $11,500 per month).

As discussed above, in its findings, the trial court enumerated R.H.'s monthly expenses adduced from the evidence, concluded that R.H. was spending $67,740.86 per year, and noted that R.H.'s living expenses "far exceed his reported income of $22,042.00 even when his $6549.00 tax refund is added." The trial court specifically found that R.H. was "uncooperative and evasive in his testimony." Additionally, the trial court found that R.H. made over $60,000 per year installing fireplaces for his parents' business without any specific expenses associated with that enterprise. Furthermore, the trial court found that calculating R.H.'s income as either ten percent of the amount he would earn from building three to four homes per year or ten percent of R.H.'s reported 2018 gross income of $1,107,570 resulted in "a similar amount." The trial court further found that R.H. had net monthly resources of $8,051.46 under Section 154.061 of the Texas Family Code and explained that it calculated the amount of R.H.'s child support obligation by multiplying his net monthly resources by 17.5%, resulting in a monthly child support obligation of $1,409.00. According to the trial court, using the chart for self-employed persons from Section 154.061 would give R.H. credit for taxes he did not pay, so the trial court apparently used the chart for employed persons. *See* TEX. FAM. CODE ANN. § 154.061 (West 2014 & Supp. 2020).

As factfinder, the trial court was entitled to assess the credibility of the witnesses, as well as to weigh the evidence and to draw reasonable inferences therefrom, and we may not substitute our judgment for that of the factfinder. *See City of Keller*, 168 S.W.3d at 822; *Jackson*, 116 S.W.3d at 761; *Jordan*, 325 S.W.3d at 713; *In re H.R.M.*, 209 S.W.3d at 108. Viewing the entire record, we conclude that substantive and probative evidence supports the trial court's calculation of R.H.'s net resources, and the trial court therefore did not abuse its discretion. Additionally, in its findings, the trial court set forth R.H.'s net monthly resources, the percentage applied to R.H.'s net monthly resources, and apparently concluded that applying the guidelines for employed persons (but not for self-employed persons) under Section 154.061 of the Family Code would be just. *See* TEX. FAM. CODE ANN. §§ 154.061, 154.130(b). The trial court explained in its findings that it refused to apply Section 154.061's guidelines for self-employed persons because doing so would give R.H. credit for paying taxes that he did not pay. *See id*. § 154.123(b). Therefore, the

trial court complied with the statutory requirements for its findings. *See id*. § 154.130(b). For all these reasons, we overrule issues two, three, and four.

**DISPOSITION**

Having overruled each of R.H.'s six issues, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered October 20, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 20, 2021**

**NO. 12-20-00247-CV**

**IN THE INTEREST OF H.L.H., A CHILD**

Appeal from the County Court at Law No. 2
of Angelina County, Texas (Tr.Ct.No. DV-38598)

THIS CAUSE came to be heard on the appellate record and brief(s) filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, all costs of this appeal are assessed against the Appellant, **R.H.,** and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*