Kendall **GUTIERREZ**, Appellant,

v.

**H.L. Brooks GUTIERREZ**, Appellee.

No. 08–00–00481–CV.

Court of Appeals of Texas,
El Paso.

July 25, 2002.

See also , 86 S.W.3d 729.

Mary C. Baker, El Paso, for appellant.

Angelica J. Barill, C. Jeff Minor, Semko & Minor, PC, Mara Asya Blatt, Smith & Gopin, El Paso, for appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

This is the second of two opinions we have issued today involving the same parties and the same underlying trial.[1] These

---

1. *See also Gutierrez v. Brooks,* 86 S.W.3d 729 (Tex.App.-El Paso , 2002, no pet. h.).

two appeals were consolidated for purposes of briefing and oral argument. In this appeal, Kendall Gutierrez (Gutierrez) appeals from a *nunc pro tunc* order entered in connection with the denial of his motion to modify managing conservatorship. We affirm.

### FACTUAL AND PROCEDURAL SUMMARY

Gutierrez and Helen Louise Brooks, formerly Helen Louise Brooks Gutierrez (Brooks), divorced on August 20, 1997. They were appointed joint managing conservators of their only child, Amber Chayenne Gutierrez, with Brooks having the exclusive right to establish the primary residence of the child. Two months later, Gutierrez filed a motion for enforcement and clarification of the prior order, alleging that Brooks had denied him visitation. He also sought injunctive relief to prevent Brooks from removing Amber from El Paso County, claiming that he had not been provided with sixty days' notice of a change of address as required in the divorce decree [2] and that Brooks intended to deny him access to Amber by moving to Maine. Brooks failed to appear at the hearing on the motion for clarification despite having been served with process. By order dated December 10, 1997, the trial court required Brooks to return Amber to El Paso, and temporarily enjoined her from removing the child from El Paso County for the purpose of changing the child's residence without the express written consent of Gutierrez or a prior order of the court.[3] Because Gutierrez had an irregular work schedule due to his employment as a firefighter, the order also clarified the terms and conditions of visitation. The order denied any relief not expressly granted.

In January 1998, Gutierrez filed a motion to modify the decree seeking sole managing conservatorship, or alternatively, a modification of the visitation provisions. Then in April of 1998, Gutierrez filed a motion to enforce the temporary injunction based upon his allegation that Brooks had removed Amber from El Paso County and had refused to notify him of the child's location. Once again, Brooks did not appear for the scheduled hearing on the enforcement action. Consequently, the trial court entered temporary orders which appointed Gutierrez as temporary sole managing conservator, suspended the order requiring Gutierrez to pay child support, and ordered Brooks to pay monthly child support to Gutierrez in the sum of $150.[4]

In October 1998, Gutierrez filed a first amended motion to modify and motion for enforcement of the injunction order. In the amended motion to modify, he sought to be appointed sole managing conservator

---

2. The decree provides: "Each person who is a party to this order is ordered to notify each other party within 10 days after the date of any change in the party's current residence address, mailing address, home telephone number, name of employer, address of employment, and work telephone number. The party is ordered to give notice of an intended change in any of the required information to each other party on or before the 60th day before the intended change. If the party does not know or could not have known of the change insufficient [sic] time to provide 60–day notice, the party ordered to give notice of the change on or before the fifth day after the date that the party knows of the change."

3. We will refer to this order as the injunction order throughout the remainder of the opinion.

4. In July 1999, Brooks filed a motion to set aside this order because her attorney had been suspended from the practice of law and had not notified her of the settings. The attorney referenced in that motion is not the attorney who represented Brooks at the subsequent jury trial or on appeal.

and to restrict Brooks' access to the child. Finally, on December 16, 1999, Gutierrez filed a second amended motion to modify in which he abandoned his request to be named sole managing conservator and instead requested that he be appointed as the joint managing conservator with the exclusive right to determine the primary residence of the child. He further sought a domicile restriction designating El Paso County as Amber's primary residence.

A jury trial was conducted in January 2000 to determine the issues raised in the second amended motion to modify. Questions One and Two inquired:

**QUESTION 1**

Should the terms and conditions of joint conservatorship be modified? Answer 'Yes' or 'No':

**ANSWER:**

NO

If your answer to Question Number 1 is 'Yes', then answer Question Number 2.

**QUESTION 2**

Which joint managing conservator should have the exclusive right to determine the primary residence of the child?

. . .

**ANSWER:**

_____

The trial court did not immediately sign an order denying Gutierrez's motion to modify; instead, as the result of continuing disputes between the parties, the court issued a memorandum in April 2000 clarifying the issues heard by the jury. The court specifically determined that the dom-

icile issue had been tried by consent and that the jury had resolved the issue in favor of Brooks. On June 23, 2000, the court entered a written order denying the relief sought by Gutierrez in his second amended motion to modify. On the same date, the court held Brooks in contempt for failure to allow visitation and failure to pay child support.

On July 20, 2000, Gutierrez filed a motion for enforcement alleging that the injunction order had modified the decree of divorce, and therefore, the jury verdict must be construed in his favor. On July 26, 2000, he filed a notice of appeal from the judgment dated June 27, 2000.[5] The following day, Brooks filed a motion for judgment *nunc pro tunc* or motion to clarify in response to Gutierrez's motion for enforcement. She requested that the order expressly reflect that Amber's residence was not restricted to El Paso County so that Brooks and Amber could return to Maine. Finally, on August 30, 2000, the trial court issued another memorandum order granting Brooks' motion for judgment *nunc pro tunc* which was memorialized in a separate written order dated September 20, 2000. That order, among other things, set aside the temporary injunction and included a recitation that Brooks may designate the child's residence and legal domicile. Within the period of plenary power following the September 20 order, Brooks filed a motion to vacate that order for the sole purpose of correcting the title to read "Order on Judgment *Nunc Pro Tunc*." On October 18, 2000, the trial court[6] signed an "Order on Judgment

---

**5.** On July 27, 2000, Gutierrez filed an amended notice of appeal in Cause Number 94–12996 to clarify that he intended to appeal from the June 23, 2000 order which denied his motion to modify. Counsel for Gutierrez had misread the date on the June 23 order as June 27 due to the trial judge's handwriting. Gutierrez also requested an extension of time

in which to file the notice of appeal which we granted on August 9, 2000. The notice of appeal filed on July 26, 2000 is the basis of the appeal in Cause Number 08–00–00329–CV.

**6.** For reasons not reflected in the record, the 171st District Court signed the order.

*Nunc Pro Tunc.*" Pursuant to Gutierrez's request, the trial court entered findings of fact and conclusions of law on October 20, 2000. Finally, on October 26, 2000, Gutierrez filed a notice of appeal from the October 18 order.[7]

## ORDER *NUNC PRO TUNC*

In Points of Error Four through Eight,[8] Gutierrez challenges the October 18 order *nunc pro tunc* on a variety of grounds. Before reaching the merits of the argument, however, we must resolve a jurisdictional issue raised by Brooks.

### *Jurisdiction*

■ In a motion to dismiss, Brooks argues that the court lacks jurisdiction because Gutierrez did not timely file a notice of appeal from the June 23 or September 20 orders.[9] A civil appeal is perfected when the notice of appeal is filed. TEX. R.APP.P. 26.1; *see Restrepo v. First Nat'l Bank of Dona Ana County, N.M.*, 892 S.W.2d 237, 238 (Tex.App.-El Paso 1995, no writ) (applying former TEX.R.APP.P. 40(a)(1)). If the appellant does not file a motion for new trial, a motion to modify, a motion to reinstate under Rule 165a, or a request for findings of fact or conclusions of law, the notice of appeal must be filed within thirty days after the judgment or other appealable order is signed. TEX. R.APP.P. 26.1; *Restrepo*, 892 S.W.2d at

238. A notice of appeal is considered timely if filed within fifteen days of the due date and accompanied by a reasonable explanation for the failure to file on the due date. *Verburgt v. Dorner,* 959 S.W.2d 615, 617 (Tex.1997); *see also* TEX.R.APP.P. 26.3.

■ Rule 306a of the Texas Rules of Civil Procedure governs the beginning of the period prescribed by those rules for the court's plenary power and for filing post-trial motions. *See* TEX.R.CIV.P. 306a(1). Rule 306a(6) pertains to *nunc pro tunc* orders:

> When a corrected judgment has been signed after expiration of the court's plenary power pursuant to Rule 316, the periods mentioned in paragraph (1) of this rule shall run from the date of signing the corrected judgment with respect to any complaint that would not be applicable to the original judgment.

TEX.R.CIV.P. 306a(6). Rule 4.3(b) of the Texas Rules of Appellate Procedure mirrors Rule 306a(6)'s provision pertaining to correction or reformation of a judgment pursuant to Rule 316 after expiration of plenary power:

> (b) *After Plenary Power Period Expires.* If the trial court corrects or reforms the judgment under Texas Rule of Civil Procedure 316 after expiration of the trial court's plenary power, all peri-

---

**7.** That notice of appeal forms the basis of the instant appeal.

**8.** Since the cases were consolidated for purposes of briefing, the first three points of error contained within Gutierrez's consolidated brief pertain to the appeal in Cause Number 08–00–00329–CV. For ease of reference and consistency, we will refer to the points of error as they are designated in Gutierrez's brief. Consequently, this opinion addresses only Points of Error Four through Eight.

**9.** Brooks is incorrect in her assertion that Gutierrez failed to timely perfect an appeal

from the June 23, 2000 order. The notice of appeal from that order was due to be filed no later than July 23, 2000, and any motion for extension of time was due no later than August 8, 2000. *See* TEX.R.APP.P. 26.1. Because the July 23 fell on a Sunday, the due date for the notice of appeal was automatically extended to July 24, 2000. *See* TEX.R.APP.P. 4.1(a). Gutierrez filed his notice of appeal on July 26, 2000. The following day, July 27, 2000, he filed a motion for extension of time in which to file the notice of appeal, which we granted on August 9, 2000. *See* TEX.R.APP.P. 26.3.

ods provided in these rules that run from the date the judgment is signed run from the date the corrected judgment is signed for complaints that would not apply to the original judgment.

Tex.R.App.P. 4.3(b).

Rule 316 of the Texas Rules of Civil Procedure permits a trial court to correct clerical mistakes in a judgment after notice has been provided to the interested parties. Tex.R.Civ.P. 316; *see Jenkins v. Jenkins*, 16 S.W.3d 473, 476 (Tex.App.-El Paso 2000, no pet.). A trial court's correction of a clerical error during the period of plenary power extends the appellate timetables. Tex.R.Civ.P. 329b(h) (if a judgment is modified, corrected, or reformed in any respect, the time for appeal shall run from the time the modified, corrected, or reformed judgment is signed); *Lane Bank Equipment Co. v. Smith Southern Equipment, Inc.*, 10 S.W.3d 308, 313 (Tex.2000). Pursuant to civil Rules 306a(6) and 329b(h), and appellate Rule 4.3, however, a judgment *nunc pro tunc* entered after expiration of plenary power operates to restart the appellate timetable but only with respect to any complaint that would not be applicable to the original judgment. Further, if the trial court corrects a clerical error after the court's plenary power has expired, no complaint can be made on appeal that could have been presented in an appeal from the original judgment. Tex.R.Civ.P. 329b(h).

We understand Gutierrez to argue that the trial court's orders of September 20 and October 18 re-started the appellate timetable because they addressed matters not contained within the June 23 order, namely, which party has the exclusive right to determine the child's residency. Thus, he reasons that his notice of appeal dated October 26 perfected this appeal. Assuming that the September 20 order in fact addressed a matter not found in the

June 23 order, the appellate timetables would have re-started on that date. Consequently, a notice of appeal from the September 20 order had to be filed no later than October 20. Prior to the expiration of the court's plenary power on October 20 and at the written request of Brooks to vacate the September 20 order, the court entered yet another *nunc pro tunc* order on October 18. That order had the effect of again extending the time periods specified in Rule 306a(1). As a result, Gutierrez's notice of appeal filed on October 26 is timely. Brooks' motion to dismiss is overruled.

## THE *NUNC PRO TUNC* ORDERS

### *Clerical Error v. Judicial Error*

In Points of Error Four and Eight, Gutierrez argues that the *nunc pro tunc* orders do not correct a clerical mistake but instead make a substantive change to the prior order. We have authority to address each of these complaints because they relate to the *nunc pro tunc* orders rather than the June 23 order. *See* Tex.R.Civ.P. 329b(h) (prohibiting appellate review of complaints that could have presented in an appeal from the original judgment).

■ The purpose of a judgment *nunc pro tunc* is to correct a clerical error in the judgment after the court's plenary power has expired. *Jenkins*, 16 S.W.3d at 482. To be clerical in nature, the error must be one that is not the result of judicial reasoning, evidence, or determination. *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex.1986). The trial court has plenary power to correct a clerical error made in *entering* final judgment, but it cannot correct a judicial error made in *rendering* a final judgment. *Jenkins*, 16 S.W.3d at 482, *citing Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex.1986). When deciding whether a correction is a judicial or a clerical error, we look to the

judgment actually rendered, not the judgment that should or´might have been rendered. *Jenkins,* 16 S.W.3d at 482. The court can only correct the entry of a final written judgment that incorrectly states the judgment actually rendered. *Id.* Simply stated, even if the court renders incorrectly, it cannot alter a written judgment which precisely reflects the incorrect rendition. *Id.*

■ Following the jury trial, the parties continued to debate which of them had the right to determine Amber's residence and they disputed the effect of the jury verdict on that issue. After consideration of the issue, the trial judge issued a written memorandum, dated April 20, 2000, in which he concluded that the domicile issue had not only been tried by consent during the jury trial, it was the core issue decided by the jury. The written order rendered on June 23 did not *expressly* address the trial court's determination that the domicile issue had been litigated. However, that order contained the following recitation:

> IT IS THEREFORE ORDERED that the relief requested by KENDALL GUTIERREZ in the Second Amended Motion to Modify in Suit Affecting the Parent Child Relationship, filed on December 16, 1999, that he be awarded the exclusive right to determine the child's residency, is DENIED and that the terms and conditions of the Joint Managing Conservatorship as contained in the final orders of this court remain unchanged.

The trial court included the following additional language in the September 20 order:

> IT IS FURTHER ORDERED AND DECREED THAT H.L. BROOKS GUTIERREZ may designate the child's residence and legal domicile and is not restricted to El Paso County. The De-

cember 9, 1997 Order is hereby set aside.

The only change made by the October 18 order *nunc pro tunc* is a change in the title from "Order Denying Relief in Suit to Modify in Suit Affecting the Parent Child Relationship" to "Order on Judgment *Nunc Pro Tunc.*"

The crux of Gutierrez's arguments is that the *nunc pro tunc* order was improper because there was no error to correct. He contends that the jury trial proceeded on the second amended motion to modify and that the jury simply found the existing joint managing conservatorship should not be changed. He explains what he believes the "existing" order provided:

> The terms and conditions of the Joint Managing Conservatorship at the time this case was submitted to the jury are contained in the Final Decree of Divorce and the December 9, 1997, Order, which ordered injunctions against relocating outside El Paso, Texas. Specifically, at the time of the jury trial the only right to determine residency Ms. Brooks had was within El Paso, Texas.

This argument is flawed for two reasons. First, he concedes that the live pleading before the jury was the second amended motion which specifically sought to modify the final decree of divorce by (1) naming Gutierrez as the joint managing conservator having the exclusive right to establish the primary residence of the child; and (2) obtaining a domicile restriction designating El Paso County as Amber's primary residence. Second, the injunction was by its very language a "temporary injunction" that prevented relocation without Gutierrez's consent *or a prior court order.* In other words, the temporary injunction issued until such time as the issues of primary custodian and domicile restriction could be litigated. The injunction had been granted pursuant to Section 105.001

of the Texas Family Code which permits a court to make a temporary order for the safety and welfare of the child, including an order which prohibits a person from removing the child beyond a geographical area identified by the court. *See* TEX.FAM. CODE ANN. § 105.001 (Vernon Supp.2001). A temporary injunction is by definition a temporary order effective until further order of the court. Indeed, if the temporary injunction constituted a final order, as Gutierrez now contends, he already had a domicile restriction in place and there was no need for his second amended motion to modify to request one.

Given the specific relief sought by Gutierrez, the factual issues before the jury, and the jury's determination that the terms and conditions of the joint managing conservatorship should not be modified, the trial court correctly concluded that the jury had considered the issue of which parent should be permitted to determine the child's primary residence and had resolved that issue against Gutierrez. The trial court stated this determination in a written memorandum prior to entry of the written judgment. While the June 23 order had not expressly set aside the injunction order which had temporarily modified the decree, that was certainly the effect since it provided that the terms and conditions of the joint managing conservatorship as contained in the *final* orders of the court remain unchanged. By restoring the court's prior final orders pertaining to the terms and conditions of the joint managing conservatorship, the June 23 order replaced the injunction order so that it was unnecessary for the court to set aside the injunction order. Stated differently, the September 20 and October 18 orders did not make a substantive change to the June 23 order but merely corrected a clerical error in an effort to quell the continuing controversy between these litigants. Points of Error Four and Eight are overruled.

### Modification of June 23 Order

■ In Point of Error Five, Gutierrez argues that the *nunc pro tunc* orders are erroneous because they conflict with both the June 23 order and the temporary injunction which he characterizes as a final order. He contends that Brooks was obligated to file a motion to modify the injunction order.

As we have already noted, the injunction order prohibiting Amber's removal from El Paso County had been granted pursuant to Section 105.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 105.001(a)(4). This was an interlocutory and unappealable order. *See* TEX.FAM. CODE ANN. § 105.001(e). Given that Gutierrez's second amended motion to modify sought to litigate the residency issue, Brooks was not obligated to challenge the injunction order by a motion to modify. The issue was already before the court. Gutierrez sought to be named the joint managing conservator having the exclusive right to establish the primary residence of the child. In the alternative, he sought a domicile restriction, presumably meaning that if Brooks were to be named as the joint conservator having the right to establish Amber's primary residence, Gutierrez wanted that right restricted to establishing Amber's residence within El Paso County. We conclude that the September 20 and October 18 orders did not make a substantive change to the June 23 order. Point of Error Five is overruled.

### Conflict Between Nunc Pro Tunc Orders and Jury Verdict

In Point of Error Six, Gutierrez argues that the jury did not decide the relocation issue because the only question submitted was whether the terms and conditions of

the joint managing conservatorship should be modified. Once again, Gutierrez assumes that the injunction order is a final order which modified the terms and conditions of the decree, and therefore, Brooks was obligated to challenge the order by filing a motion to modify. Having failed to do so, Gutierrez reasons that Brooks is not entitled to have the *nunc pro tunc* orders reflect that she may designate the child's residence and legal domicile. Our reasoning outlined in Points of Error Four and Five applies equally here. Point of Error Six is overruled.

### *Trial by Consent*

In Point of Error Seven, Gutierrez challenges the trial court's determination that the relocation issue was tried by consent. Rule 67 of the Texas Rules of Civil Procedure provides that when issues not raised by the pleadings are tried by implied consent, they must be treated in all respects as if they had been raised in the pleadings. *See* Tex.R.Civ.P. 67. This rule is limited to those exceptional cases where it clearly appears from the record as a whole that the parties tried an unpled issue by consent. *In re Walters*, 39 S.W.3d 280, 289 (Tex.App.-Texarkana 2001, no writ); *Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex.App.-Houston [1st Dist.] 1993, writ denied). First, we reiterate that the issue was pled, and pled by Gutierrez himself. Second, in order to determine whether the issue was tried by consent, we must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Stephanz*, 846 S.W.2d at 901. However, Gutierrez has not provided us with a reporter's record. Therefore, we are unable to review his complaint. Point of Error Seven is overruled. Having overruled Points of Error Four through Eight, we affirm the

*nunc pro tunc* order dated October 18, 2000.