**Opinion issued May 17, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00928-CV

———————————

**DOUGLAS MORAN, ROYAL BODKIN, LLC, AND WOOLWORTH INTERESTS, LLC, Appellants**

**V.**

**RICHARD WILLIAMSON D/B/A WILLIAMSON REALTY, Appellee**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-45234**

---

## O P I N I O N

Appellants, Douglas Moran, Royal Bodkin, LLC, and Woolworth Interests, LLC (collectively, "Moran"), sued appellee, Richard Williamson *d/b/a* Williamson Realty, for fraud and other torts related to the purchase of two multi-unit rental properties located in Houston. Williamson counter-claimed, also alleging various

tort claims arising from the dispute regarding the properties. The trial court rendered judgment in favor of Williamson. In ten issues on appeal, Moran argues that the trial court erred because its judgment was not supported by the pleadings and because the evidence was insufficient to support its various findings of fact and conclusions of law. We conclude that the judgment favoring Williamson was not supported by the pleadings and was not tried by consent; we therefore set aside the judgment on those claims and modify the judgment accordingly. We affirm the judgment in all other respects.

## Background

Moran is an attorney who was friends with Williamson, a real estate broker. In 2008, Williamson and Moran learned of an opportunity to purchase some distressed properties during foreclosure proceedings. One of the properties was a multi-unit complex consisting of twenty-six duplexes located on Woolworth Street ("Woolworth Property"). The parties disagree about the exact events surrounding this endeavor, but the end result was that in December 2008, they purchased the Woolworth Property for $235,000. They intended to "flip" the Woolworth Property by reselling it at a profit within a short period of time. Moran and a third party, Fred Urich,[1] each invested $50,000 in cash, and Williamson obtained a loan in the amount of $135,000 for the remainder of the purchase price. Williamson

---

[1]      Fred Urich is not a party to this appeal.

took title to the Woolworth Property by a deed dated December 22, 2008. Also on December 22, 2008, Moran formed Woolworth Interests, LLC and filed the relevant documents with the Texas Secretary of State showing himself as the sole manager and member of Woolworth Interests. On January 10, 2009, Williamson conveyed title to the Woolworth Property to Woolworth Interests, LLC.

Williamson listed the Woolworth Property for sale but never found a buyer. In the meantime, Williamson collected rent from the property's tenants and used the rent to maintain the property and make interest payments on the $135,000 note. Moran subsequently invested more money to pay for necessary insurance and taxes. When he was unable to locate a buyer for the Woolworth Property and the principal amount on the $135,000 note had come due, Williamson restructured the note and paid the monthly payments, at least in part, out of the rental incomes and with cash infusions from Moran and Urich. In 2011, Moran took over management of the Woolworth Property, stating that he had fired Williamson as the property manager. Moran and Urich retired the restructured note when it came due by making the final payments. Woolworth Interests, LLC continued to hold the Woolworth Property and operated it until October 2013, when it entered into a sale contract for approximately $350,000. Under the terms of that sale, Woolworth Interests, LLC received approximately $25,000 in cash and a $325,000 seller-

financed note that was payable over a term of fifteen years. Moran subsequently bought out Urich's interest in the Woolworth Property.

In a separate transaction, Moran also purchased at foreclosure an investment property consisting of ten apartment units and nine single-family homes on Reid and Sayers Streets ("the Reid Property"). Moran purchased that property for $207,000 in cash and took title to the Reid Property through his corporation Royal Bodkin, LLC.

Moran filed this suit based on conflicts arising out the Woolworth Property. He asserted causes of action for fraud, fraud by misrepresentation, fraud by nondisclosure, negligent misrepresentation, breach of fiduciary duty, breach of an express warranty, and violations of the Deceptive Trade Practices Act ("DTPA"). Among other tort claims, Moran asserted that Williamson violated his fiduciary duties as a real estate broker and property manager, misrepresented the nature and expense of flipping the property, and failed to disclose the existence of the $135,000 note at the time he purchased the Woolworth Property.

Williamson filed a countersuit. His live pleading as of the time of trial asserted causes of action for breach of fiduciary duty, rescission of the deed transferring title of the Woolworth Property to Woolworth Interests, LLC, violations of the DTPA, unjust enrichment, and fraud. Williamson also sought the imposition of a constructive trust and attorney's fees.

The parties tried the case to the bench in April 2014. The trial court attempted to resolve the dispute between Moran and Williamson on the basis that it was an "oral partnership agreement gone bad." At the outset of the bench trial, the trial court stated that it had viewed the pre-admitted exhibits and that, based on his "preliminary look at things," he did not believe any of the tort claims had merit and that he had "to figure out what the terms of the partnership agreement were." As the trial court sought evidence regarding who were members of the partnership that had bought the properties, Moran's attorney answered, "Your Honor, until we walked in I had no contention of partnership. We had an agreement between two individuals. Whether that would be a partnership I hadn't quite thought that through. It would have been Doug Moran and [Urich LLC] to the extent that they held an interest in [Woolworth Interests LLC], if Woolworth was being held simply as a vessel to hold [the Woolworth Property]."

The trial court also sought evidence from Moran regarding contributions to a partnership, and his attorney stated, "We started off, Your Honor, with determination of who has the ownership interest in the properties. I did not come down here to discuss the capitalization of a partnership. That was not part of the case that we pled. It was who owns the . . . the property." Moran also disagreed on the record with the trial court's characterization of the relationship between Moran and Urich as a partnership:

5

[The Court]: You agreed it was an oral partnership.

[Moran]: I don't—No, I don't, Your Honor. I don't agree with that as a principle.

[The Court]: I though you just told me a few minutes ago that there was an oral partnership agreement between Mr. Moran and Mr. [Urich].

[Moran]: That there was an agreement between the two and there is—there's—that is not an issue, Your Honor. The difference between Mr. Moran and Mr. [Urich] is not[—] I didn't come to prove that case.

[The Court]: Is there a counterclaim? Are you claiming there was an oral partnership agreement?

[Williamson]: Yes, Your Honor.

Thus, although Williamson represented at trial that he was asserting a claim for breach of contract and breach of a partnership agreement, Moran objected to that characterization of the case. Moreover, the pleadings did not reflect either a breach of contract claim by Williamson or a claim by him for breach of a partnership agreement. Moran notified the trial court that he did not have the evidence ready to present at trial regarding his capital contributions to the partnership and other related issues. On the record, the trial court discussed continuing the bench trial to allow Moran to gather evidence or to refer the case to an accountant to resolve the partnership questions, but ultimately it did not continue the trial.

6

Throughout the bench trial, Moran continued to object to testimony relating to a breach of partnership claim. When the trial court requested information about partnership tax returns, Moran's attorney stated that the taxes were done through Woolworth Interests, LLC and said, "Until we walked in this court, Your Honor, we would have put everything forward under the Woolworth LLC and come forward. We would not have worked it as a partnership." Moran and Williamson both testified regarding their understanding of the parties' roles in purchasing the Woolworth and Reid Properties and the various amounts invested.

Based on an exchange that occurred off the record, the trial court reviewed the pleadings and recognized on the record that Williamson "did not plead breach of contract, breach of an oral partnership agreement. . . . Breach of contract wasn't in it, okay, but there is a, you called it unjust enrichment, which I can construe, I guess as quantum meruit, all right, and . . . this sounds like a quantum meruit claim if I ever heard one." The trial court expressed its belief that Williamson was entitled to some amount of recovery although the amount remained unclear. It stated,

> I've got some numbers here for, you know, outstanding payments. The only thing I don't have is any evidence regarding the value of those services [rendered by Williamson] and the quantum meruit [theory of recovery] also provides for the recovery of attorney's fees. So, you know, I don't have sufficient evidence before me to value the partnership and—nor what the—all the capital contributions of the partners were. I just don't have that in front of me.

The attorneys and trial court discussed on the record the value of various aspects of the transactions under a quantum meruit theory of recovery. Moran contradicted Williamson's and the trial court's representations regarding the capital contributions of each party, arguing that he had incurred expenses that were not represented in the record, stating, for example, that he had paid over $6,000 in water bills over the ninety days before trial. However, his attorney stated, again, that he did not have that information included as a trial exhibit because he "didn't come with that—that was not the lawsuit we were going to be trying." And the trial court acknowledged that Williamson had not pleaded that cause of action.

Moran again stated on the record:

And just before we get started [introducing rebuttal testimony], Your Honor, just for the record's sake, I would just like to put on the record that, in fact, we've come to attempt to try the case that was pled by both plaintiff and defendant. And some of the discovery—or some of the testimony that's been solicited by Your Honor in an attempt to encumber us is not necessarily the same case that was pled to the extent that we would—we're not waiving our insistence that the judgment and the evidence adhere to the petition.

We just wanted to put that on the record so that it's not waived should things go awry. We intend to fully cooperate with the Court, but we would like the pleadings to be held.

After final arguments, Williamson stated,

Finally, Your Honor, to the extent that there's any issue with respect to Mr. Williamson's pleadings in this matter, we have prepared and would like to submit a motion for leave to amend our pleadings to conform to the testimony in trial. We don't believe there's any surprise or unfair surprise to the plaintiffs in this case that that's what this case was about.

Moran objected, as his attorney characterized, "loudly, strongly, and at great length." The trial court overruled Moran's objection and granted Williamson leave to amend his pleadings. However, Williamson did not file any amended pleadings at that time.

The trial court then stated that it was "going to treat this as a partnership accounting or breach of an oral partnership case." The trial court stated that it thought "the pleadings [on file at the time of trial] were sufficient to raise the issue. They weren't as clear as I would have liked. I didn't see a specific breach of contract claim. But there were several references to there being a partnership agreement and joint ownership and request for constructive trust until respective interest could be determined." The trial court gave an oral ruling that it was going to hold that Moran take nothing on all of his claims and that Williamson take nothing on his claims for "breach of fiduciary duty, DTPA, fraud, et cetera" and would render judgment based on "a claim that there was an oral partnership agreement with respect to both properties that they claim that that was breached and for an accounting regarding the various interest[s] in this partnership." However, the trial court continued to express frustration about arriving at the best way to settle the final judgment between the parties. Moran's attorney asked, "Can I know upon what statutory or legal basis the attorney's fees are being awarded?" The trial court answered,

They're going to be awarded for breach of contract, an oral partnership agreement; and whether the pleadings are sufficient to support that, I don't know. They may not be. But that's part of why, again, I cut them from 53 to 20, okay, partly because things are muddy on the pleadings and what theory would support the attorney's fees. That's why I cut them down.

On September 15, 2014, the trial court signed its final judgment awarding Williamson $94,611.75 from Moran and Woolworth Interests, LLC for his interest in the Woolworth Property; $82,240.25 from Moran and Royal Bodkin, LLC for his interest in the Reid Property; and $20,000 in attorney's fees from Moran, Woolworth Interests, LLC, and Royal Bodkin, LLC. The trial court specifically ordered that Moran take nothing against Williamson on the claims Moran had pleaded. It also ordered that Williamson "take nothing against [Moran] by this suit, save and except for the causes of action of breach of partnership agreement and breach of contract."

On October 9, 2014, the trial court signed its Findings of Fact and Conclusions of Law determining that there was an agreement between Moran, Urich, and Williamson that proceeds from the Woolworth Property would be distributed "40%, 40%, and 20%, respectively." The trial court found that Williamson was entitled to a cash payment based on the sale price of the Woolworth Property, even though it recognized that the Woolworth Property was sold pursuant to a seller-financed promissory note payable over fifteen years, which term had not been completed at the time of trial. The trial court made no

10

findings and entered no order allocating any risk to Williamson in the event the purchaser quit paying the note and the sale transaction fell through at some point after the trial.

The trial court also concluded that there was an agreement between Moran and Williamson to "compensate Williamson 10% of the value of the Reid Property for his assistance locating and acquiring said property," even though Williamson had alleged a 50% ownership interest in the Reid Property and Moran had alleged that Williamson had no interest in the Reid Property. The trial court entered findings on the specific values of the Properties involved and the capital contributions of each party, determining that Williamson was owed certain sums for unreimbursed expenses in arriving at the amounts included in the final judgment.

On October 14, 2014, Moran moved for new trial, arguing, in part, that the trial court erred in allowing Williamson to try the unpleaded theories of oral partnership and breach of contract and in finding the existence of an oral partnership. Moran also argued that the trial court erred in granting Williamson a trial amendment because Moran proved that he was surprised and prejudiced by the late amendment to the pleadings. Williamson responded to the motion for new trial by arguing that the trial court "properly allowed [Williamson] to file an amendment to [his] pleadings to allege an oral partnership and oral contract." He

also argued that he had proven the existence of a partnership. Williamson filed amended pleadings asserting causes of action for breach of an oral partnership and breach of contract with his response to the motion for new trial on November 17, 2014. The trial court denied the motion for new trial, and this appeal followed.

## Conformity of the Judgment to the Pleadings

Moran does not challenge on appeal the trial court's take-nothing judgment on his own claims. Rather, in his first and second issues, Moran argues that the trial court's judgment in favor of Williamson is not supported by the pleadings because Williamson did not file any pleadings asserting oral partnership or breach of contract theories until after the trial court signed the final judgment and these issues were not tried by consent. Williamson argues that his first amended counterclaim, which did not expressly include a cause of action for breach of partnership or breach of contract, nevertheless provided Moran with fair notice of those claims in that the first amended counterclaim asserted causes of action for unjust enrichment and constructive trust.

## A. Standard of Review

Texas follows a fair notice standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what type of evidence might be relevant. *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007); *see also* TEX. R. CIV. P. 45 (setting out definition

and basic requirements of "pleadings"). Pleadings must give fair notice of the claim asserted and the relief sought to provide the opposing party with enough information to enable him to prepare a defense. *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015). Pleadings are sufficient if a cause of action may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged. *See id.*; *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (op. on reh'g). In the absence of special exceptions, the petition should be construed liberally in favor of the pleader. *Boyles*, 855 S.W.2d at 601; *McNeil v. Nabors Drilling USA, Inc.*, 36 S.W.3d 248, 250 (Tex. App.—Houston [1st Dist.] 2001, no pet.). However, a court may not use a liberal construction of the petition as a license to read into the petition a claim that it does not contain. *Moneyhon v. Moneyhon*, 278 S.W.3d 874, 878 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

A court's jurisdiction to render judgment is invoked by the pleadings, and a judgment unsupported by the pleadings is erroneous. *In re S.A.A.*, 279 S.W.3d 853, 856 (Tex. App.—Dallas 2009, no pet.); *see Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812–13 (Tex. 1983) ("The jurisdiction [of the court] is activated and becomes actual jurisdiction over a party only after the filing of a petition the subject matter of which is within the jurisdiction of the court. . . . [A] judgment must be supported by the pleadings and, if not so supported, it is erroneous."). Therefore, a trial court's judgment must conform to the pleadings. TEX. R. CIV. P.

301; *Khalaf v. Williams*, 814 S.W.2d 854, 858 (Tex. App.—Houston [1st Dist.] 1991, no writ). In determining whether the judgment conforms to the pleadings, we must view the pleadings as a whole. *Khalaf*, 814 S.W.2d at 858. A general prayer for relief will support any relief raised by the evidence that is consistent with the allegations and causes of action stated in the petition. *Salomon v. Lesay*, 369 S.W.3d 540, 553 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Nelson v. Najm*, 127 S.W.3d 170, 177 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *Khalaf*, 814 S.W.2d at 858. Absent trial by consent, a claimant may not be granted a favorable judgment on an unpleaded cause of action. TEX. R. CIV. P. 301; *Binder v. Joe*, 193 S.W.3d 29, 32 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co.*, 223 S.W.3d 1, 18 (Tex. App.—El Paso 2005, pet. denied).

## B.    The Pleadings

Moran argues that the trial court committed error by rendering a judgment that was not supported by the live pleadings. He argues that "Williamson's pleading did not assert that there was an oral partnership between him and Moran, nor did it include a cause of action for breach of contract or request a partnership accounting," which were the claims on which the trial court rendered its judgment in favor of Williamson and awarded him damages. Moran does not challenge the trial court's rendition of a take-nothing judgment on his own claims.

14

Williamson acknowledges that his live pleading did not expressly plead a cause of action for breach of a partnership agreement or breach of contract, but he argues that his pleadings gave Moran fair notice of those claims and were sufficient to support the trial court's judgment.

Here, Moran was the original plaintiff. His petition alleged facts indicating that Williamson participated in the property transactions as a real estate broker and property manager. Moran sued Williamson for fraud and other torts, alleging that Williamson misrepresented various aspects of the real estate transactions and acted fraudulently in his capacity as property manager. He did not allege a cause of action for breach of a partnership agreement or breach of contract.

Williamson countersued. His live pleading as of the time of trial asserted causes of action for breach of fiduciary duty, rescission of the deed transferring title of the Woolworth Property to Woolworth Interests, LLC, violations of the DTPA, unjust enrichment, and fraud. Williamson also sought the imposition of a constructive trust and attorney's fees. He asserted no cause of action for breach of a partnership agreement or breach of contract. Williamson also alleged as an affirmative defense to Moran's claims that Moran was "estopped from denying that [he] owns a one-half interest in Woolworth, LLC and Royal Bodkin, LLC."

In support of his claims and affirmative defense, Williamson asserted that he, Moran, and Urich "collectively purchased for profit a 26-unit apartment

15

complex on Woolworth"; that he took title to the Woolworth Property upon purchase; that, based on Moran's suggestion, he subsequently transferred title to the Property to Woolworth Interests, LLC, formed by Moran; that "Moran totally disregarded Mr. Williamson's contribution to the LLC"; that he listed the Woolworth Property for sale but was unable to find a buyer and collected rent from the tenants, which was used to maintain the property and pay the $135,000 note; that he invested money in the course of restricting the note; and that he "invested hundreds of hours managing, maintaining, and renovating the Woolworth Property units without compensation from Woolworth Interests LLC."

Williamson also alleged, as facts in support of his claims, that he and Moran "partnered to purchase and renovate" the Reid Property; that Moran "agreed to invest the original purchase price" and that he himself "agreed to invest his time and efforts to renovate and manage the properties"; that he "invested tens of thousands of dollars and hundreds of hours managing, maintaining, and renovating the Reid Property units"; and that "[n]otwithstanding [Moran's] and [his] agreement that they would share ownership of the Reid Property, Moran filed Royal Bodkin, LLC's certificate of formation stat[ing] that [Moran] was the registered agent and sole manager of Royal Bodkin, LLC."

Williamson asserted that Moran had acted as his attorney prior to, during, and after the purchases of the Woolworth and Reid Properties and, as such, owed

him a fiduciary duty that Moran breached by putting the title to both properties in holding companies solely owned by Moran and by not compensating Williamson for his work and expenses relating to the properties.

Williamson also alleged that Moran's failure to disclose the structure of the two holding companies was a violation of the DTPA and constituted fraud. He alleged that "[t]he Plaintiffs in this lawsuit have been unjustly enriched in that they seek to deny Mr. Williamson's interests in the Woolworth and Reid Properties or, in the alternative, interests in Woolworth Interests, LLC or Royal Bodkin, LLC—notwithstanding Mr. Williamson's longstanding investment of time, labor, and money renovating and managing the Woolworth and Reid Properties." He pleaded that his interests could only be protected by rescinding the deed transferring the Woolworth Property to Woolworth Interests, LLC, and he asked that the Properties "be held in a constructive trust for the benefit of the other owners of such properties to prevent the unjust enrichment of Mr. Moran, who has sole management rights over the limited liability companies that hold title to such properties." He sought recovery of damages for "loss of his investment in time, energy, and money invested in the Woolworth and Reid Properties," including exemplary and punitive damages and attorney's fees under Civil Practice and Remedies Code Chapter 38.

Moran filed his answer to these pleadings, asserting various affirmative defenses. In his answer, Moran argued that Williamson's own fraud in misrepresenting that he had obtained "outside investors" to supply the additional funds for purchasing the Woolworth Property, when he had, instead, engineered "a loan with a lien against the property being purchased and then funded this loan with the proceeds of the property without the knowledge of any of the other investors" constituted an affirmative defense of his own against Williamson's claims. Moran also argued that, based on Williamson's live pleading, Williamson was "attempting to obtain either an interest in real property, or a real estate commission, or [to] enforce a contract which cannot be completed within one year which is not in writing," and, thus, the statute of frauds would bar Williamson's ability to recover an interest in the Properties, to collect any real estate commission, or to recover on any contract which was to take more than one year to perform. He also asserted that the contracts in the case were the deeds that transferred the Properties to their respective corporations and that the merger doctrine and the parol evidence rule prevented Williamson from asserting a present interest in the Properties. Finally, Moran argued that the statute of limitations barred Williamson from challenging the deeds transferring the Properties to their respective holding companies.

We cannot reasonably infer from these pleadings that Williamson intended to plead a cause of action asserting that he was actually a member of a partnership engaging in the transactions, as opposed to a real estate broker and property manager. His pleadings do not assert facts relevant to the existence of a partnership, a claim for breach of a partnership agreement, or a claim for a partnership accounting. Factors indicating the formation of a partnership include: (1) receipt or right to receive a share of profits of the business; (2) expression of intent to be partners in the business; (3) participation or right to participate in control of the business; (4) sharing or agreeing to share losses and liabilities of the business; and (5) contributing or agreeing to contribute money or property to the business. *See* TEX. BUS. ORGS. CODE ANN. § 152.052(a) (Vernon 2012); *Sewing v. Bowman*, 371 S.W.3d 321, 333 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd).

Williamson's pleadings did not identify any of the factors relevant to formation of a partnership beyond his general assertion that he, Moran, and Urich "collectively purchased for profit" the Woolworth Property and that he had an ownership interest in the holding companies that held title to the properties, which were limited liability companies. He did not plead facts indicating the nature of any agreement regarding allocation of profits and losses or his right to participate in the control of the business, as would indicate the existence of a partnership

19

agreement. Nor did his pleadings identify any on-going business. He did not assert any manner in which Moran breached an alleged partnership agreement, other than to make a general assertion that Moran failed to compensate him for his investments of time and money. All of the facts Williamson alleged are consistent with his involvement in the transactions as a real estate broker or property manager hired by the buyer and owner, as Moran alleged, and they did not serve to put Moran on notice that Williamson was asserting the existence of a partnership. *See Low*, 221 S.W.3d at 612 (fair notice pleadings looks to whether opposing party can ascertain from pleadings nature and basic issues of controversy and what type of evidence might be relevant).

Williamson's live pleading was likewise insufficient to put Moran on notice of a breach of contract claim based on some other agreement, outside of a partnership agreement, that invested him with a right or interest in the Properties. The pleading did not allege or otherwise identify the existence of a valid contract or the terms of such a contract, it did not assert that Williamson tendered performance or the manner in which Moran breached, and it did not allege the damages caused by such a breach. *See Luccia v. Ross*, 274 S.W.3d 140, 146 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (setting out elements of breach of contract claim). Rather, Williamson's pleadings alleged generally that he was involved in the purchases of the Properties and that he had not been compensated

20

for his contributions, but they did not identify any contracts except for the deeds transferring the Properties to their respective holding companies. He also asserted that he was entitled to damages for "loss of his investment in time, energy, and money invested in the Woolworth and Reid Properties," including exemplary and punitive damages and attorney's fees under Civil Practice and Remedies Code Chapter 38. However, considering the pleadings as a whole, these allegations did not put Moran on notice that he would be required to defend his actions pursuant to any specific agreement of the parties other than the deeds transferring the Properties to his holding companies. And, even then, Williamson's pleadings did not identify any partnership or other agreement with respect to the transfer of those deeds or allege facts that could constitute a breach of such an agreement.

Williamson argues that his unjust enrichment claim, read in conjunction with his claim for a constructive trust, "gave [Moran] fair notice of [his] cause of action for breach of contract, including breach of a partnership agreement." He argues that unjust enrichment is an alternative remedy based on an implied-contract theory. *See Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 722–23 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (unjust enrichment is implied-contract theory providing that one should make restitution if it would be unjust to retain received benefits). However, when an express contract covers the subject matter of the dispute, generally there can be no recovery under a quasi-contract

theory such as unjust enrichment. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). Thus, Williamson's pleading of only the equitable remedy of unjust enrichment indicates that he was *not* seeking a legal remedy under any valid, enforceable contract.

We also observe that Williamson himself concedes that although the trial court granted him leave to file a trial amendment, he did not take advantage of that ruling by actually filing a timely amended pleading. *See Dallas Area Rapid Transit v. Morris*, 434 S.W.3d 752, 760 (Tex. App.—Dallas 2014, pet. denied) ("A trial amendment must be filed as a written pleading; an oral amendment at trial is insufficient to modify the pleadings."); *Food Source, Inc. v. Zurich Ins. Co.*, 751 S.W.2d 596, 599 (Tex. App.—Dallas 1988, writ denied) ("Amended pleadings may be filed up to the time judgment is signed.").

We conclude that none of Williamson's pleadings asserted a cause of action for the existence of a partnership agreement or for breach of that agreement or other contract.

## C.    Trial by Consent

Moran also argues that the issues of breach of a partnership agreement or other contract were not tried by consent and that, contrary to that claim, the record demonstrates his repeated opposition to trial of any such claims in the absence of appropriate pleadings and the opportunity to prepare for trial on those claims.

Moran also complains of the trial court's award of attorney's fees based on breach of a partnership agreement or other contract.

Texas Rule of Civil Procedure 67 provides that when issues not raised by the pleadings are tried by implied consent, they must be treated in all respects as if they had been raised in the pleadings. TEX. R. CIV. P. 67; *Gutierrez v. Gutierrez*, 86 S.W.3d 721, 729 (Tex. App.—El Paso 2002, no pet.). This rule is limited to those exceptional cases where it clearly appears from the record as a whole that the parties tried an unpleaded issue by consent. *Gutierrez*, 86 S.W.3d at 729; *In re Walters*, 39 S.W.3d 280, 289 (Tex. App.—Texarkana 2001, no pet.); *Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex. App.—Houston [1st Dist.] 1993, writ denied). It is not intended to establish a general rule of practice; it should be applied with care, and never in a doubtful situation. *Stephanz*, 846 S.W.2d at 901. Trial by implied consent "applies only where it appears from the record that the issue was actually tried, although not pleaded." *Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 281 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). To determine whether the issue was tried by consent, the court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Stephanz*, 846 S.W.2d at 901. When evidence relevant to both a pleaded and an unpleaded issue has been admitted without objection, the doctrine of trial by consent should not be applied unless clearly warranted. *Johnston*, 9 S.W.3d at 281. "[A]n issue is not

tried by consent when the evidence relevant to the unpleaded issue is also relevant to a pleaded issue because admitting that evidence would not be calculated to elicit an objection and its admission ordinarily would not prove the parties' 'clear intent' to try the unpleaded issue." *Hampden Corp. v. Remark, Inc.*, 331 S.W.3d 489, 496 (Tex. App.—Dallas 2010, pet. denied).

Here, Moran attempted to try the case on the causes of action that he pleaded. He did not initially object to testimony regarding the circumstances under which he, Urich, and Williamson purchased and operated the Properties in question, nor was he required to do so, as that evidence was relevant to his own causes of action. *See id.* Once the trial progressed sufficiently to make clear that Williamson was presenting evidence on unpleaded causes of action and that the trial court was attempting to elicit further evidence on those claims, Moran repeatedly complained that causes of action for an oral partnership, for a partnership accounting, and for breach of contract were not in the pleadings, and he disagreed with the trial court's characterization of the case as a partnership case. Moran repeatedly informed the trial court that he could not provide evidence of the existence of a partnership or of the capital contributions made by any alleged partners, so as to provide an accounting, because he believed the trial would settle questions of who held ownership interests in the Properties based on the validity of the deeds transferring the Properties to the holding companies.

24

Williamson contends that Moran failed to object to trial of the unpleaded partnership and breach of a partnership agreement claims. However, we observe that no special language is required to present an objection to a trial court; rather, a litigant must make a timely request, objection, or motion sufficient to put the trial court on notice of the basis of the complaint. *See* TEX. R. APP. P. 33.1. And the standard to determine whether an issue was tried by consent does not look solely to whether the opposing party objected at a particular time, but whether the record as a whole demonstrates that the parties consented to trial of an unpleaded claim. *See Gutierrez*, 86 S.W.3d at 729. The record demonstrates that the trial court was aware of Moran's objection to trying Williamson's unpleaded causes of action for breach of a partnership agreement and breach of contract.

Moran stated on the record,

> And just before we get started [introducing rebuttal testimony], Your Honor, just for the record's sake, I would just like to put on the record that, in fact, we've come to attempt to try the case that was pled by both plaintiff and defendant. And some of the discovery—or some of the testimony that's been solicited by Your Honor in an attempt to encumber us is not necessarily the same case that was pled to the extent that we would—*we're not waiving our insistence that the judgment and the evidence adhere to the petition.*
> We just wanted to put that on the record so that it's not waived should things go awry. We intend to fully cooperate with the Court, but we would like the pleadings to be held.

(Empahsis added).

Furthermore, Moran made the trial court aware that Williamson had not pleaded the claims for breach of a partnership agreement and breach of contract and that he was not prepared to present evidence on those issues at trial. The trial court stated on the record that, at Moran's insistence, it had reviewed the pleadings and determined that Williamson "did not plead breach of contract [or] breach of an oral partnership agreement. . . ." The trial court further recognized the lack of adequate pleadings by allowing Williamson an opportunity to file a trial amendment to add pleadings for breach of a partnership agreement and breach of contract, but Williamson failed to do so. And Moran again raised this issue in his motion for new trial, objecting to the rendition of judgment on unpleaded claims.

Thus, Moran expressly challenged the trial court's refusal to properly characterize the case according to the parties' pleadings, in which Moran had asserted that Williamson committed various torts in his actions as a real estate broker and property manager relating to the Properties. Moran repeatedly stated that he had intended to try to prove his claims during trial. He stated that he was not prepared to try other claims as recharacterized by the trial court. This objection likewise indicated that Moran never consented to trying the issues of breach of partnership agreement because that claim was never pleaded.

In light of Moran's repeated complaints and the record demonstrating that the trial court was aware that Williamson had not pleaded claims for breach of a

partnership agreement or breach of contract, that Moran had expressed that he was unprepared to try those issues, and that Moran specifically stated that his introduction of evidence on those claims was conditioned on his statement that he was "not waiving [his] insistence that the judgment and the evidence adhere to the petition" but was instead attempting to comply with the trial court's directives, we conclude that this is not a case where it clearly appears from the record as a whole that the parties tried an unpleaded issue by consent. *See Gutierrez*, 86 S.W.3d at 729. We conclude that the unpleaded theories were not tried by consent. *See, e.g.*, *Hampden Corp.*, 331 S.W.3d at 496 (issue is not tried by consent when evidence relevant to unpleaded issue is also relevant to pleaded issue because "admitting that evidence would not be calculated to elicit an objection and its admission ordinarily would not prove the parties' 'clear intent' to try the unpleaded issue"); *Johnston*, 9 S.W.3d at 281 (when evidence relevant to both pleaded and unpleaded issue has been admitted without objection, doctrine of trial by consent should not be applied unless clearly warranted); *Stephanz*, 846 S.W.2d at 901 (trial by consent rule is limited to exceptional cases, is not intended to establish general rule of practice, and should be applied with care and never in a doubtful situation).

Because Williamson did not plead for the existence of a partnership or other valid agreement regarding his interest in the Properties, for breach of such an agreement, or for a partnership accounting, and these issues were not tried by

consent, the trial court's reliance on these claims in rendering its judgment in favor of Williamson was unsupported by the pleadings. Because the portion of the trial court's judgment that awarded Williamson damages for breach of a partnership agreement and breach of contract is not supported by the pleadings, it is erroneous and must be set aside. *See Cunningham*, 660 S.W.2d at 813–14 (holding that trial court erred in rendering personal judgment against party without pleadings and thus judgment must be set aside); *In re S.A.A.*, 279 S.W.3d at 857 (modifying trial court's judgment to delete portion not supported by pleadings and affirming judgment as modified). Likewise, the award of attorney's fees based on breach of a partnership agreement and breach of contract must also be set aside. *See Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015) ("To recover attorney's fees under [Civil Practice and Remedies Code chapter 38], a party must prevail on the underlying claim and recover damages."). We need not address Moran's remaining issues challenging the sufficiency of the evidence to support the trial court's judgment in Williamson's favor and award of damages to him for breach of a partnership agreement or other contract, and Moran does not challenge the trial court's take-nothing judgment on the other claims presented in the parties' pleadings.

## Conclusion

We conclude that the trial court's judgment in favor of Williamson on the claims for breach of a partnership agreement or other contract was not supported by the pleadings and these claims were not tried by consent; the trial court therefore erred in entering it. We modify the trial court's judgment to delete the award of damages for breach of partnership agreement and breach of contract and the related attorney's fees and affirm the trial court's judgment as modified.


Evelyn V. Keyes
Justice

Panel consists of Justices Jennings, Keyes, and Bland.